**Haidee IRAGORRI**

v.

**UNITED TECHNOLOGIES CORP., et al.**

**No. 3:94CV1673 JBA.**

United States District Court,
D. Connecticut.

March 31, 1999.

James G. Green, Jr., Anthony J. Natale, Pepe & Hazard, Hartford, CT, for Haidee Iragorri, Individually and as Ancillary Administratrix of Estate of Mauricio Iragorri on behalf of Decedent's Survivors, Patricia Iragorri, Maurice Iragorri, plaintiffs.

Edward W. Mayer, Jr., Edward T. Falsey, III, Delaney, Zemetis, Donahue, Durham & Noonan, Wallingford, CT, Patrick M. Noonan, Delaney, Zemetis, Donahue, Durham & Noonan, Guilford, CT, Karen L. Karpie, for United Technologies Corp., Otis Elevator Co., International Elevator, Inc., defendants.

## RULING ON DEFENDANTS' RENEWED MOTION TO DISMISS BASED UPON FORUM NON CONVENIENS [DOC. # 99] AND PLAINTIFFS' MOTION TO PRECLUDE DEFENDANTS' RENEWED MOTION TO DISMISS [DOC. 97]

ARTERTON, District Judge.

In 1995, defendants, United Technologies Corporation ("UTC") and Otis Elevator Co. ("Otis"), filed a motion to join International Elevator, Inc.'s motion to dismiss based on *forum non conveniens.* [doc. # 22] On September 16, 1996, the Court denied this motion without prejudice

to renew after discovery as to whether the defective elevator that caused Mr. Iragorri's death in Columbia was manufactured or designed in Connecticut. [doc. # 70] After such discovery and additional briefing, defendants have renewed their motion to dismiss, [doc. # 99] and plaintiffs have moved to preclude defendants from renewing their motion to dismiss based on *forum non conveniens* [doc. # 97]. All prior submissions by the parties related to the issue of whether this action should be dismissed for *forum non conveniens* grounds are incorporated and considered by the Court.

**Factual Background**

In 1992, Mr. Iragorri, a Florida domiciliary, was living with his family in Cali, Colombia when he fell five floors down an open passenger elevator shaft in an apartment building. The plaintiffs include Mr. Iragorri's widow and their two children, Patricia and Maurice.

On February 12, 1998, the Court dismissed International Elevator from this action for the lack of personal jurisdiction and transferred the case against International Elevator to the District Court of Maine.[1] [doc. # 95] The plaintiffs' claims against the two remaining defendants, Otis and its parent UTC, are asserted under two legal theories. The first is that Mr. Iragorri died as a result of International Elevator employee negligence while International Elevator was acting as Otis's agent. Secondly, plaintiff asserts that Otis is liable for a defect in the elevator's design which caused the elevator malfunction. Even though the elevator was manufactured and delivered by Otis of Brazil, plaintiff asserts that Otis may be found liable because of its relation with Otis of Brazil and its involvement in designing the elevator.

**Discussion**

The *forum non conveniens* analysis is a two step process. First, the court

must determine if there is an adequate alternative forum and then must weight the public and private interest factors identified by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501. 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), "to determine which forum will be most convenient and will best serve the ends of justice." *Peregrine Myanmar v. Segal,* 89 F.3d 41, 46 (2d Cir.1996). There is ordinarily a strong presumption in favor of the plaintiff's choice of forum since dismissal for *forum non conveniens* is the exception rather than the rule. *See Murray v. British Broadcasting Corp.,* 81 F.3d 287, 290 (2d Cir.1996). The decision whether to dismiss for *forum non conveniens* is "committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). As the Second Circuit recently observed, "[a]ppellate review of *forum non conveniens* is severely cabined." *Alfadda v. Fenn,* 159 F.3d 41 (2d Cir., 1998). "The decision lies wholly within the broad discretion of the district court and should be only reversed if that discretion has been clearly abused." *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 46 (2d Cir.1996). If a court focuses on all the *Gilbert* factors when reviewing a motion to dismiss based on *forum non conveniens,* its discretion is accorded "substantial deference" *Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. 252.

While there is a strong presumption in favor of the plaintiff's choice of forum, this presumption may be overcome if 1) there exists an adequate alternate forum, and 2) the public and private factors outlined in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) strongly point towards trial in another forum. *See Allstate Life Ins., Co. v. Linter Group Ltd.,* 994 F.2d 996 (2d Cir.), *cert. denied,* 510 U.S. 945, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993).

1. On January 4, 1999, the District of Maine adopted the Magistrate Judge's recommended ruling granting International Elevator's renewed motion to dismiss based on *forum non conveniens. Iragorri v. International Elevator, Inc.,* No. 98–236–PH, (D.Me.1999) (Hornby, J.).

## I. Adequate Alternate Forum

■ As the Second Circuit has noted: "[t]he requirement of an alternative forum is ordinarily satisfied if the defendant is amenable to process in the jurisdiction, except in "rare circumstances" when "the remedy offered by the other forum is clearly unsatisfactory." *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. 252 (dismissal would not be appropriate where the alternate forum does not recognize the cause of action)." *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 292 (2d Cir.1996).

■ At the November 19, 1998 oral argument, the defendant's counsel represented that defendants would submit to jurisdiction in Columbia and would waive any statue of limitations defense they might now have, conditions on which a court could condition dismissal based on *forum non conveniens. See, e.g., Blanco v. Banco Indust. de Venezuela*, 997 F.2d 974 (2d Cir.1993); *Jota v. Texaco, Inc.*, 157 F.3d 153 (2d Cir.1998). Based on these representations, there is no inadequacy in the forum of Columbia as to those two considerations.

■ Plaintiffs also challenge the adequacy of Columbia as an alternate forum based on differences between Columbian and Connecticut law, specifically the damages typically awarded in wrongful death actions. That the law of the forum differs from American law should not ordinarily be given conclusive or even substantial weight in assessing the adequacy of the forum. *See Piper Aircraft*, 454 U.S. at 247, 102 S.Ct. 252. Assuming a Colombian court could and would exercise jurisdiction over the case, the Court must determine whether "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* Here, plaintiffs do not claim that their action could not be brought in a Columbian court, but rather assert that the law of Colombia will not permit them as complete relief as they could obtain in an American forum. Plaintiffs contend that various limits on damages under Colombia law renders Colombia an inadequate forum. (Pl. Supp. Mem. of Law, dated Nov. 24, 1998 at 8; *see also* Pl. Mem. re: Choice of Law Analysis and Limitations of Damages under the Law of Colombia). In addition, plaintiffs contend that Colombian courts will provide inadequate relief as evidenced by recent cases in which plaintiffs recovered minimal wrongful death awards. (*Id.* at 8). The Court does not find these damage awards necessarily probative of the award likely in this case absent any contextual information on the universe of cases from which they were obtained or the facts and circumstances under which they were awarded. Moreover, mere differences in the magnitude of awards possible in Colombia does not render Colombia an inadequate forum. *See e.g., Piper Aircraft*, 454 U.S. at 246, 102 S.Ct. 252 (plaintiff may not defeat a motion to dismiss for *forum non conveniens* "merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum."); *Alcoa Steamship Co. v. M/V Nordic Regent*, 654 F.2d 147, 159 (2d Cir.1980)(significantly lower recovery in Trinidad courts compared with the U.S. District Court for the Southern District of New York did not render foreign forum inadequate).

Finally, plaintiffs raise lack of personal safety in Colombia as demonstrative of its inadequacy as a forum based on the March 1998 travel advisory issued by the U.S. State Department for Colombia, which "warns U.S. citizens against unnecessary travel to Columbia." (*See* Pl. Mem. of Law in Support of Motion to Preclude Defendants' Motion to Dismiss, Ex. B). "Although the adequate alternative forum inquiry is concerned with systemic inadequacy, at least two district courts have found that plaintiffs were unlikely to obtain justice in Ghana and Iran where the plaintiffs were political refugees who fled their counties and would face grave personal danger if they were to return." *See*

*Cabiri v. Assasie–Gyimah,* 921 F.Supp. 1189 (S.D.N.Y.1996)(Ghana); *Rasoulzadeh v. Associated Press,* 574 F.Supp. 854 (S.D.N.Y.1983) (Iran). However in *Tennecal Funding Corp. v. Sakura Bank,* an unpublished Ninth Circuit case referenced by both parties, a plaintiff's fear for his personal safety was not found a proper factor in considering the adequacy of the alternative forum. 87 F.3d 1322 (9th Cir. 1996) (plaintiff's personal danger from Japanese mafia was not relevant in assessing the adequacy of the alternate forum). Notwithstanding newspaper accounts of the startling crime rates in Colombia, *see, e.g.,* Dean J. Schemo, *Risking Life, Limb and Capital: U.S. Companies in Colombia, but very Carefully,* N.Y. Times, Nov. 6, 1998, at Cl. (cited in Pl. Supp. Mem., dated Nov. 24, 1998 at Ex. C)., in this case, no particularized threat to these plaintiffs or witnesses has been demonstrated. Moreover, the plaintiffs are knowledgeable about Columbia, having chosen to live there for an extended period of time and they continue to have close relatives in Colombia, who have already assisted them in this litigation. Furthermore, while Colombia's drug cartel implicates concerns about the criminal justice system and prosecutions, there has been no showing of its impact on the civil justice system. At least one other district court in this circuit has found Colombia an adequate forum for resolution of a foreigner's wrongful death claim arising from the crash of Avianca Flight 410 in Colombia, notwithstanding the existence of this civil unrest. *See Diaz v. Aerovias Nacionales de Colombia,* 1991 WL 35855 (S.D.N.Y.1991). In *Diaz,* the court granted the motion to dismiss for *forum non conveniens* based on defendant's submission of the affidavit of an Colombian attorney that the civil unrest had not led to a breakdown of the civil system, that more than 121 of the 137 cases brought by the survivors had been settled in Colombia and 14 claims were progressing through the court system. The record in this case supports a finding that Colombian courts would provide the plaintiffs an adequate alternate forum if

dismissal were subject to the following conditions: 1) that defendants submit to jurisdiction in Colombia; 2) that they waive any statute of limitations defenses they might now have under Colombian law; and 3) that they agree to reopen this case if the Colombian courts refuse plaintiffs' action.

## II. Balancing Public and Private Interests

■ Having concluded that Colombia provides an adequate alternate forum, the Court proceeds to balancing the public and private interests, and only if that balance is strongly in favor of the defendants, will plaintiffs' choice of forum be disturbed. *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir.1991) (dismissal is not appropriate unless "the balance of convenience tips strongly in favor of trial in the foreign forum").

The private interests are: 1) the interests of the litigants in having the case tried in a particular forum; 2) the ease of access to sources of proof; 3) the availability of compulsory process for attendance of unwilling witnesses; 4) the convenience of willing witnesses; and 5) other factors which might shorten trial or make it less expensive. *See Allstate Life Ins., Co. v. Linter Group Ltd.,* 994 F.2d at 1001. The relevant public interests include: 1) resolving local disputes locally; 2) avoiding unnecessary problems in the application of foreign law, and 3) avoiding burdening jurors with cases having no impact on their community. *See Alfadda v. Fenn,* 159 F.3d 41 (2d Cir.1998).

Although no single factor is determinative, the Court considers and balances all of them to determine whether the factors so tip in the Colombian forum's favor as to overcome the strong presumption in favor of the American plaintiffs' choice of forum.

### A. Analysis of Private Interests

#### 1. Litigants' Interest in Trial In a Particular Forum

All of the plaintiffs are United States citizens and thus, there is an even stronger

presumption in favor of the their selected forum. *See Alfadda v. Fenn,* 159 F.3d 41, 1998 WL 741836 (2d Cir.1998); *Murray v. British Broadcasting Corp.,* 81 F.3d 287, 290 (2d Cir.1996)(forum choice presumption is weaker when the plaintiff is foreign). However, citizenship is not dispositive or talismanic. As the Supreme Court stated in *Piper Aircraft:*

> A citizen's forum choice should not be given dispositive weight however.... Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal would be proper.

*Piper,* 454 U.S. at 256, n. 23, 102 S.Ct. 252 (citations omitted).

Here, plaintiffs' citizenship is somewhat diminished because plaintiffs' chose to live in Colombia where the accident occurred and seek to bring their action arising from this occurrence in the United States. *See, e.g., CCS Int'l, Ltd. v. ECI Telesystems, Ltd.,* 1998 WL 512951 (S.D.N.Y.1998) (diminished weight is accorded plaintiff's choice of forum where the plaintiff actively sought international business and the cause of action does not have significant ties to the plaintiff's home forum); *Blimpie Int'l v. ICA Menyforetagen AB,* 1997 WL 143907, *11 (S.D.N.Y.1997) ("Blimpie's interest in litigating at home ... [is] diluted by the fact that the alleged misconduct arose out of Blimpie's efforts to seek business opportunities in Sweden"); *Sussman v. Bank of Israel,* 801 F.Supp. 1068 (S.D.N.Y.1992) (conditionally granting dismissal based on *forum non conveniens* where American resident and estate of United States citizen brought suit against Israeli banks arising out of fraudulent banking activities which took place in Israel).

Although the plaintiffs' claims are brought by American citizens against the defendants, both American corporations, the connection between the United States, particularly Connecticut, and the circumstances of the accident is tenuous at best. The plaintiffs and the decedent were not merely casual tourists passing briefly through a foreign nation, but were voluntarily living in Colombia for more than fifteen months when the accident occurred. By choosing Colombia as their domicile for an extended period of time, albeit not permanently, the plaintiffs and the decedent not only availed themselves of the benefits of Colombia's system of government, but also subjected themselves to the laws of Colombia. For plaintiffs such as these who decided to live abroad for extended periods of time, their "American citizenship and residence do not constitute the powerful, near decisive factors for which they contend." *Sussman v. Bank of Israel,* 801 F.Supp. 1068, 1074 (S.D.N.Y.1992).

## 2. Access to Sources of Proof

Proof of plaintiffs' claims for negligence and product liability will involve witnesses and evidence from both Colombia and the United States, no matter where the trial is held. Defendant contend that since the conduct directly related to the accident took place in Colombia, most of the material sources of proof are located there, including sources probative of the purchase and installation of the elevator, the lighting and maintenance condition of the building; the condition of the elevator, the actions of International Elevator's repairman and the building doorman, decedent's condition at the time of the accident, the medical examiner's examination results, the emergency rescue and medical workers observations and the results of the Colombian government's inquiry into the accident. Defendant's claim that the majority of the documents are in Spanish and that many of the witnesses speak only Spanish. In sum, defendants' contend that the difficulty of access to evidence and witnesses in this

case strongly favors a Colombian forum. (Pombo Aff. at ¶ 19 (doc. # 17)).

Plaintiffs, on the other hand, contend that the Colombian records of the penal inquiry are readily accessible as public record (and already in plaintiffs possession). (Natale Aff. (Pl.'s App. in Support of its Opp'n to Defs. Mot. to dismiss, Ex. O (doc. # 25)). Plaintiffs also contend that additional information regarding the accident and the elevator's design from the record of Connecticut-based UTC and Otis and their insurers can most easily be accessed from Connecticut, not Colombia. As well, plaintiffs' American medical and design experts are far more accessible in Connecticut. In their supplemental memorandum, plaintiffs also now argue that because International Elevator has been dismissed and liability is premised on International Elevator's role as the defendants' agent, the need for Colombian witnesses and evidence is now eliminated or diminished. (*See* Pl. Supp. Mem., dated Sept. 11, 1998, at 3. (doc. # 109)). In addition, plaintiffs state that most of their witnesses including themselves, their mental health economist and product design experts are all located in the United States, that the elevator was designed by the defendants in the United States, that the defendants managed their Latin American operations from Connecticut, that authentication witnesses for documents and agreements, including the technical assistance agreements all reside in the United States and that these documents are all in English, all factors favoring a Connecticut trial forum.

However, after carefully reviewing the nature of the claims and the proffers of evidence involved, the Court concludes that under either of the plaintiffs' alternate theories of liability—product liability or negligence—the vast majority of material evidentiary sources related to the elevator and activities on the fatal day are located in Colombia, including plaintiffs' agency theory of liability which will still require evidence of International Elevator's employee's negligence in Colombia.

A trial in either forum—Colombia or Connecticut—involves some documents and witnesses from a distant forum and in a foreign language. However, given the nature of the plaintiffs' claims and the situs of the underlying accident, the overwhelming majority of the material evidence and key witnesses are located in Colombia. While language and travel difficulties can be addressed through use of translation services, video depositions and other technological advancements, these substitutes increase the cost of the litigation for both sides and can be best minimized by holding trial in the forum where the preponderance of the material evidence and witnesses are located, which in this case is Colombia.

## 2) The availability of compulsory process for attendance of unwilling witnesses

Defendants contend that the Federal Rules do not provide for compulsory process over Colombian witnesses and argue that the costs of bringing the many Colombian witnesses to Connecticut should be considered as favoring a Colombian forum. (Pombo Aff. at ¶ 20 (doc. 17)). In addition, defendants state that if there are liable third parties in Colombia, and a judgment against defendants is obtained in Connecticut, the liable third parties could not be sued subsequently in Colombia.

At oral argument, plaintiffs responded to the lack of compulsory service by representation that all of the Colombian witnesses would come to Connecticut voluntarily. This sparse record, however, provides no basis for assessing the factor for compulsory process and thus it is considered as not supporting or militating against either forum.

## 3) The cost of obtaining attendance of willing witnesses

The plaintiffs also raise for consideration the financial burden to them of transporting their witnesses to Colombia. Given

the Court's earlier finding that most of the key non-expert witnesses are located in Colombia and cannot be compelled to testify in a U.S. trial, and recognizing that witnesses must come from both fora, a balancing the respective costs of witness transportation strongly favors the Colombian forum.

The plaintiffs submit an affidavit concluding that their experts (mental health provider, financial and (anticipated) product design), are unwilling to travel to Colombia to testify in light of the March 1998 Travel Advisory and the danger posed to American citizens. (Natale Aff. at ¶ 3. (Ex. E., Pl. Supp. Mem., dated Sept. 11, 1998 (doc. # 109))). As to the availability of retained experts, this is a matter between counsel and them. As to all U.S. based expert witnesses, forensic technology such as video conferencing offers an acceptable solution, even though perhaps less desirable than live courtroom testimony.

**4) Other considerations**

Finally, plaintiffs assert that because of the extremely high crime rate in Colombia resulting from guerilla and drug cartel activity, including physical attacks, kidnaping, murdering and threatening of judges and foreigners, particularly Americans, a Colombian forum is very "inconvenient" because dangerous for both sides. Plaintiffs rely primarily on the Department of State's Travel Advisory issued March 1998 as evidence that Colombia would be an unsafe venue for them. The March 1998 State Department Travel Advisory warns:

> Violence by narcotraffickers, guerillas, paramilitary groups and other criminal elements continues to affect all parts of the country. U.S. citizens have been the victims of recent threats, kidnapping and murders. U.S. citizens in Colombia are currently targets of kidnaping efforts of guerilla rebels. Since it is U.S. policy not to pay ransom or make other concessions to terrorists, the U.S. Government's ability to assist kidnapped

Americans is limited. U.S. citizens of all age groups and kidnappings have occurred in all major regions of Colombia. U.S. citizens who choose to travel to Colombia should avoid travel to the city of Cali due to threatened threat in that city.

> Colombia is one of the most dangerous countries in the world.

(Ex. B. Pl. Mem. of Law in Support of Mot. to Preclude Defs.' Renewed Filing of Their Mot. to Dismiss Based Upon *Forum Non Conveniens* (doc 98)). In addition, plaintiffs rely on the Schemo

New York Times article, *supra* at p. 163, highlighting the safety risks to American companies who have employees and operations in Colombia. Defendants respond that the plaintiffs' reliance on the current travel advisory and risk to business travelers must be discounted in light of the fact that similar (albeit less severe) travel advisories were in effect before and during the 15 months the plaintiffs lived in Colombia. (See Ex. A, Defs. Resp. to Pls. Supplement Mem. of Law Re: Mot. to Dismiss for *Forum Non Conveniens* ).

Despite the current travel advisory, at oral argument plaintiffs did not dispute that daily flights continue between Colombia and the United States. (*See also, Id.* at Ex. B). Further, plaintiffs have close family members still residing there who have already assisted in this litigation, such that plaintiffs are not unwitting tourists at greater risk.

After careful and deliberate analysis, the Court finds that on balance the private interest factors tilt strongly in favor of dismissal of this action.

**B. Analysis of Public Interests**

**1. The local interest in local resolution**

Colombia has a clear and strong interest in having this case litigated in its courts as a means of preserving and protecting its citizens' public safety by regulating defective products or services affecting its citi-

zenry. In comparison, Connecticut's interest in this case is minimal at best. The only alleged connection between Connecticut and the accident is defendants' incorporation in this state and the disputed allegations that defendants designed or provided technical assistance related to design of the elevator.

Discovery has produced no evidence indicating that the subject elevator was manufactured in Connecticut nor that any of the conduct that led to the accident occurred in Connecticut, despite plaintiffs allegations that the elevator in which Mr. Iragorri died was "designed, manufactured, and/or sold" by UTC, Otis of Connecticut, and International Elevator. (Complaint ¶ 12). Defendants relying on the affidavit and deposition of Douglas Pew, Director of Legal Affairs for the Latin American Operations of Otis, (Pew Aff, (doc. # 23), Pew Dep. (doc. # 28)), contend that the subject elevator was designed, manufactured and sold by a Brazilian Company, which the parties refer to "Otis Brazil," (Pew Aff., ¶ 3, Pew Dep. at 37, 57), which is "a separate corporation from Otis Elevator Company. Otis Brazil was established under Brazilian law, and has a board of directors and officers which are distinct from the board of directors and officers of Otis Elevator Company." (Pew Aff. at ¶ 4). Pew represents that Otis Brazil's operations are located in Brazil and that it designs and builds its elevators in its own factory for sale to Latin American distributors. (Pew Dep. at 38–50).

Plaintiffs' response is twofold. First, they assert that "defendants retained and exercised significant control over their practically wholly owned Brazilian affiliate that allegedly assembled the defective elevator." (Pls.' Resp. Reply at 3, (Doc. # 31)), relying on Pew's testimony that "Otis Elevator Company owns 99 point 9999 percent of the stock of Otis Brazil," (Pew. Dep. at 24 (Ex. A, Pls. Mem. of Law in Resp. (doc. # 31)), and that Otis' Latin American Operations office in Connecticut

"collect[s] and supervise[s] the operations of the directly owned companies of Otis in Latin America." (*Id.* at 96). In addition, plaintiffs plans point to agreements between Otis of Connecticut and Otis of Brazil, including a Technical Assistance Agreement, a Trademark/Tradename Agreement, and a License Agreement, as demonstration of defendants' control over Otis of Brazil.

Secondly, plaintiffs proffer invoices of International Elevator for purchases of elevator component parts from Otis from which they argue the inference that Otis sold parts to International Elevator which were used in the subject elevator that may have contained the defect causing the accident. However defendants offer the affidavit of Jay Bailey, Otis's Manager of Marketing for Latin American Operations, disclaiming that Otis has any elevator manufacturing plant in Connecticut, and stating that: "[t]he subject invoices relate to elevator parts which, in most, if not all, instances were manufactured by subcontractors for Otis." (Bailey Aff. at ¶ 5 (doc. # 64)). Finally, Bailey represents that replacement parts for the elevator in the building where Mr. Iragorri died "would ordinarily be obtained from Brazil," and that "[t]here is nothing on the invoices . . . to suggest that they were utilized in the elevators at" the apartment building in question. (*Id.* at ¶ 6).

Given the strong record that the elevator in question was not primarily designed or even manufactured in Connecticut, this forum's interest in the litigation is tangential at best. Given that plaintiffs' action against International Elevator transferred previously to the district of Maine has now been dismissed on *forum non conveniens* grounds, these two actions can be tried together in furtherance of the goals cost reduction and efficiency.

## 2. Avoidance of problems in the application of foreign law

The next factor which the parties debate is whether bringing this action in Colom-

bia will avoid the problem of foreign law interpretation. If, as the defendants argue, the case should be solely governed by Colombian law, this factor strongly favors Colombia as the appropriate forum. Plaintiffs maintain that Connecticut (and perhaps Florida) law would apply. "While 'the Court need not definitively resolve the choice of law issue at this point, the likelihood that foreign law will apply weighs against retention of this action' in the *forum non conveniens* inquiry." *CCS Int'l, Ltd. v. ECI Telesystems, Ltd.*, 1998 WL 512951, *10 (S.D.N.Y.1998) (citing *Ioannides v. Marika Maritime Corp.*, 928 F.Supp. 374, 379 (S.D.N.Y.1996)).

Sitting in diversity, the federal court is bound to apply Connecticut's conflict of law principles. *See Klaxon Company v. Stentor Electric Manufacturing*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Koreag Controle et Revision v. Refco F/X Associates*, 961 F.2d 341, 350; *Almonte v. New York Medical College*, 851 F.Supp. 34, 39 (citation omitted). Plaintiffs' claims involve tort negligence and product liability, contract/corporate law (the relation between Otis Brazil and Otis and UTC) and agency law (relation between Otis and International Elevator). Choice of law determinations can differ with respect to different elements of the case.

Two conflict of law "tests" are utilized in Connecticut courts: the doctrine of *"lex loci delicti"* under which "the substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury," *O'Connor v. O'Connor*, 201 Conn. 632, 636, 519 A.2d 13, (1986), and "the principles of the Restatement Second [Conflict of Laws]," which the parties refer to as the "significant relationship test." Under Connecticut law, courts must "incorporate the guidelines of the Restatement as the governing principles for those cases in which application of the doctrine of *lex loci* would produce an arbitrary, irrational result." *Id.*, at 650, 519 A.2d 13.

Application of the *lex loci delicti* principle is not shown to produce arbitrary, irrational results here and Colombian law would probably apply since Colombia was the place of injury. Even if the principles of the Second Restatement were applied, Colombian law could still apply.

Section 145(1) of the Restatement Second provides: "The rights and liabilities of the parties with respect to an issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." *Quoted in id.*, at 650, 519 A.2d 13. Section 6 provides that when there is no state statutory directive on choice of law,

> the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Quoted in id.*, at 651, 519 A.2d 13.

For the purposes of determining (b), (c), and (e), which appear to be most at issue here, the Court turns to § 145(2) of the Restatement Second. *Id.* at 652, 519 A.2d 13, providing:

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) place where the relationship, if any, between the parties is centered. These contacts are to be

evaluated according to their relative importance with respect to the particular issue.

*Quoted in id.,* at 652, 519 A.2d 13.

Factor (a) undisputedly is Colombia. Factor (b) also most strongly points to Colombia, but could implicate conduct in Connecticut or possibly Brazil depending on which of the plaintiffs' alternate tort theories is considered. Under the negligence theory, the conduct occurred in Colombia since the International Elevator employee worked in Cali, Colombia. However, with respect to the product liability theory, the injury causing conduct could have occurred where the elevator was designed and/or manufacture (Connecticut or Brazil). Although the current evidence points to manufacture in Brazil, there is dispute about design activities in Connecticut with subsequently licensing and manufactured by Otis of Brazil. Factor (c) also produces mixed results, given that plaintiffs are Florida domiciliaries, (Def.'s Memo of Law on the Choice of Law, Ex. A (Doc. # 45)), UTC is a Delaware corporation with a principal place of business in Connecticut, and Otis is a New Jersey corporation with its principal place of business in Connecticut.

Although some aspects of the litigation might be governed by Connecticut corporate or agency law, since Colombian law will govern most of the tort claims and Colombia has strong interest and close connection to the occurrence, the Court concludes that this public factor points strongly in favor of dismissal.

### 3. Avoiding burdening taxpayers or factfinders with foreign cases

Although the accident occurred in Colombia, this case has relevance to American jurors since it involves the death of an American and the rights of his American widow and children resulting from what is alleged to be the negligence or product defend of an elevator related to American corporations. However, a Colombian factfinder could also have a strong interest in

resolving the case since the accident occurred there and involved some allegedly endangering conduct in that forum. Given these competing interests, this factor does not necessarily favor either forum.

On balance, however, because Colombian law will govern most of the plaintiffs' claims, and Colombia has a pronounced public interest in deciding this controversy, the public interest factors tilt strongly in favor of dismissal

### Conclusion

Notwithstanding the fact that plaintiffs are American citizens, the Court finds that the private and public interests implicated point strongly in favor of Colombia as the forum for this litigation. Therefore, the Defendants' renewed motion for dismissal on *forum non conveniens* grounds [doc. # 99] is GRANTED on the following conditions:

1. that defendants consent to suit and service of process in Colombia;

2. that the appropriate forum in Colombia accept jurisdiction to hear the case;

3. that defendants waive any statute of limitations defense;

4. that defendants advise the Court of the consent to these conditions and of their efforts to determine whether the appropriate forum of Colombia will accept jurisdiction, within thirty days; and

5. that defendants agree that if the appropriate Colombian forum refuses to take jurisdiction, this action may be restored to this Court's docket.

The Plaintiffs' Motion to Preclude the Defendants' Renewed Filing of their Motion to Dismiss based upon *Forum Non Conveniens* [doc. # 97] is DENIED as moot.

IT IS SO ORDERED.