In re LERNOUT & HAUSPIE
SECURITIES LITIGATION.

Gary B. Filler, et al., Plaintiffs,

v.

Jo Lernout, et al, Defendants.

Stonington Partners, Inc.,
et al, Plaintiffs,

v.

Carl Dammekens, et al., Defendants.

Paul G. Bamberg, et al., Plaintiffs,

v.

KPMG, LLP, et al., Defendants.

Janet Baker, et al., Plaintiffs,

v.

KPMG, LLP, et al., Defendants.

Nos. CIV.A.00–CV–11589–PBS, CIV.
A.02–CV–10302–PBS, CIV.A.02–CV–
10303–PBS, CIV.A.02–CV–10304–PBS.

United States District Court,
D. Massachusetts.

Nov. 18, 2002.

Steven E. Cauley, Cauley, Geller, Bowman & Coates, Little Rock, AR, Michael G. Lange, Alicia M. Duff, Jeffrey C. Block, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, Boston, MA, W. Todd Ver Weire, Paul J. Geller, Gene Cauley, Cauley, Geller, Bowman & Coates, LLP, Little Rock, AR, Glen DeValerio, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, Boston, MA, Curtis L. Bowman, Cauley, Geller, Bowman & Coates, LLP, James P. Bonner, Ralph M. Stone, Lee S. Shalov, Kenneth A. Ricken, Shalov, Stone & Bonner, New York City, Robert P. Frutkin, Stuart H. Savett, Barbara A. Podell, Savett, Frutkin, Podell & Ryan, Philadelphia, PA, Bernard M. Gross, Deborah R. Gross, Law Office of Bernard M. Gross, Philadelphia, PA, Richard A. Lockridge, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, Lisa J. Rodriguez, Rodriguez & Richards, LLC, Haddonfield, NJ, Thomas L. Earp, Earp Cohn, P.C., Westmont, NJ, Michael D. Donovan, David A. Searles, Donovan Searles, LLC, Philadelphia, PA, for plaintiffs.

William R. Moorman, Stephen Wald, Craig & Macauley, P.C., Arnold P. Messing, Kevin J. Lesinski, Choate, Hall & Stewart, Boston, MA, Michael P. Carroll, Diem-Suong T. Nguyen, William Fenrich, Davis, Polk & Wardwell, New York City, John B. Missing, Herbert Thomas, Ellen D. Marcus, Debevoise & Plimpton, Washington, DC, James S. Dittmar, Sanjit S. Korde, James O. Fleckner, Hutchins, Wheeler & Dittmar, Boston, MA, Donald Chase, Franklin R. Weissberg, David A. Piedra, Peter D. Weinstein, Rachelle L. DeGregory, Morrison, Cohen, Singer & Weinstein, LLP, New York City, William Shields, Jonathan I. Handler, Day, Berry & Howard, Boston, MA, Bruce A. Baird, James A. Levine, Paul W. Schmidt, William D. Iverson, Covington & Burling, Washington, DC, Andrew Good, Silverglate & Good, Boston, MA, Roger E. Zuckerman, Steven M. Salky, Zuckerman Spaeder LLP, Washington, DC, Michael P. Connolly, Murtha, Cullina, Roche, Carens & DeGiacomo, Boston, MA, Frank Rozzano, Tara J. Holubar, Robert J. Kaler, Gadsby & Hannah LLP, Douglas H. Meal, Emily F. Klineman, Ropes & Gray, Boston, MA, Bradley A. Harsch, Philip L. Graham, Jr., Stephanie G. Wheeler, Sullivan & Cromwell, New York City, Theodore Edelman, Sullivan & Cromwell, London, England, Vincent M. Amoroso, Erik Lund, Posternak, Blankstein & Lund, Boston, MA, David N. Ellenhorn, Louis M. Solomon, Teresa A. Gonsalves, Solomon, Zauderer Ellenhorn, Frischer & Sharp, New York City, Thomas W. Evans, Janet B. Fierman, Cohen & Fierman, LLP, Boston, MA, John W. Polk, Baker & McKenzie, Washington, DC, Nelson Callahan, Hill & Barlow, Boston, MA, John A.D. Gilmore, Hill & Barlow, P.C., Boston, MA, George A. Salter, John A. Redmon, Nicholas W.C. Corson, Hogan & Hartson, LLP, New York City, Anthony M. Feeherry, Sarah E. Walters, Gus P. Coldebella, Goodwin Procter LLP, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### *INTRODUCTION*

*Sed quis custodiet ipsos custodes?*[1] But who will guard these guardians? This dispute involves securities fraud claims against an outside Board of Directors, including the Audit Committee, of a now bankrupt speech recognition software corporation, Lernout & Hauspie Speech Products, N.V. ("L & H"). The proposed class action[2] alleges that the Audit Committee was asleep at the switch, recklessly so, and failed to catch the massive fraud by L & H's Senior Officers and auditors.

There are also allegations of insider trading against defendant Francis Vanderhoydonck, a member of the Board, and Ellen Spooren, the Senior Vice President of marketing and corporate communications. The Baker/Bamberg consolidated complaint further asserts fraud allegations against Roehl Pieper, who, as it turns out,

---

1. Juvenal, *Satires,* VI.347–8.

2. Class Plaintiffs allege violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, against the outside directors who sat on the L & H Audit Committee (Count II) and defendants Francis Vanderhoydonck and Ellen Spooren, who allegedly sold stock while in possession of material non-public information (Count IV); violations of § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the outside director defendants and the Audit Committee defendants (Count III); and respondeat superior liability against two corporations which exercised their power to appoint members of the L & H Board (Count VIII). The related Baker, Bamberg, Filler and Stonington complaints involving the Dragon and Dictaphone deals assert claims of common law fraud and negligent misrepresentation.

was not on the L & H Board at the time of the Dragon stock-swap transaction on March 27, 2000, but was a member of the L & H transaction team.

This memorandum is the third in a series. The Court assumes familiarity with the legal standards and factual background set forth in *In re Lernout & Hauspie Sec. Litig.*, 208 F.Supp.2d 74 (D.Mass.2002) ("*Lernout I*"), which analyzes the allegations of fraud against the Senior Officers of L & H, and the sequence of events leading up to the company's downfall in the fall of 2000, and *In re Lernout & Hauspie Sec. Litig.*, 230 F.Supp.2d 152 (D.Mass.2002) ("*Lernout II*"), which details the allegations against the outside auditors KPMG.

After hearing on July 23, 2002, and a review of the extensive briefing, the Motions to Dismiss brought by defendants Vandendriessche, Cauweiler, DePauw, RVD, Spooren and Vanderhoydonck are **DENIED** in whole or in part, and the Motions to Dismiss brought by defendants Pieper, Cloet, Coene, Detremmerie, Vieux, Van Acker, Vergnes, and Microsoft are **ALLOWED** in their entirety.

### DISCUSSION

1. *The Audit Committee members (Vandendriessche, Cauweiler, and DePauw)*

Erwin Vandendriessche, the Chairman of the Audit Committee, served as RVD Securities' representative on the Board of Directors.[3] Dirk Cauweiler and Marc G.H. DePauw also served on the Audit Committee. They are sued in Count II for violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, and in Count III under

§ 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

■ With respect to the claim against them based on § 10b, all three members signed documents which included the allegedly fraudulent statements. Vandendriessche signed the Form S–3 Registration Statement filed by L & H on August 25, 2000, which publicly incorporated the fraudulent 1999 Form 10–K report, filed on June 30, 2000. This Court may take judicial notice of this SEC filing pursuant to Fed.R.Evid. 201, which defendants had the opportunity to address. *See Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir.1991). The other two manually signed the original 1999 Form 10–K report. These signatures satisfy the requirement that defendants make a fraudulent statement.

The allegations also establish a strong inference of scienter based on recklessness against the members of the Audit Committee at least with respect to the fourth quarter financials in 1999 and the annual report for 1999. By the summer 2000, defendant Vandendriessche, and the Audit Committee, knew:

(1) L & H had failed to implement a system of internal audit controls, as KPMG had been persistently recommending since May 1998 (¶¶ 288; 388–397);[4]

(2) L & H failed to hire an internal auditor until June 2000 despite the Audit Committee's own commitment in August 1999 to get back to the directors with a recommendation (¶¶ 290, 390);

(3) the Audit Committee promised the Board of Directors that it would

---

**3.** Apparently, under Belgian law, a corporation can serve on the Board of Directors.

**4.** Unless otherwise indicated, paragraph references are to the plaintiffs' First Consolidated and Amended Class Action Complaint.

meet *prior* to each quarterly financial report to review it (¶ 290) and continued to sign off on financial statements in 2000 despite the continuing lack of internal controls and various red flags described below in ¶¶ 4-8;

(4) the SEC was investigating L & H accounting practices in January 2000;

(5) L & H management was issuing financial information in press releases without the advance approval of the Audit Committee (¶ 284);

(6) in reports to the Audit Committee, KPMG continually noted issues concerning cash collection from the LDCS and revenues recognized from Korea, and in a letter dated August 18, 1999, KPMG had reported that at least nine transactions in the Second Quarter of 1999 were questionable (¶ 284);

(7) in a confidential letter, KPMG reported on November 17, 1999 to Vandendriessche, the chair of the Audit Committee, that it did not consider its "limited review of the third quarter financial statements completed, because of outstanding revenue recognition issues in Korea and cash collection issues from the LDC's" (¶ 310); [5] and

(8) in a different letter from KPMG to Dammekins dated November 17, 1999, which was communicated to Vandendriessche, KPMG advised that it could not sign the audit opinion for the December 31, 1999 audit unless issues relating to outstanding receivables, revenues and Korean contracts were resolved (¶ 308).

The Audit Committee members protest that they reasonably relied on KPMG, an internationally recognized accounting firm, which continued to be actively involved in the preparation and dissemination of L & H's statements. While such reliance may in many circumstances be reasonable and negate an allegation of recklessness, here it does not get the Audit Committee members off the hook because they ignored KPMG's admonitions over at least two years regarding deficiencies in the internal audit controls and KPMG's report of serious accounting, cash collection and revenue recognition issues in the second and third quarter of 1999. Although KMPG continued to give a clean audit, the Audit Committee had a duty to oversee the auditors, that is, to guard the guardians. The SEC has stated that Audit Committees play a critical role in "overseeing and monitoring management's and the independent auditor's participation in the financial reporting process." Audit Committee Disclosure, Exchange Act Release No. 34–42266 (effective January 10, 2000). When all reasonable inferences are drawn in favor of plaintiffs, the Audit Committee was reckless in performing this role until at least the November 2000 investigation, after the horse was out of the barn. *See Greenfield v. Professional Care, Inc.,* 677 F.Supp. 110, 114 (E.D.N.Y.1987) (finding allegations that a corporation's audit committee members knew of or were reckless in disregarding the company's issuance of false financial statements sufficient to plead a

---

**5.** In the related party litigation (brought by plaintiffs Stonington, Filler, Roth and Bamberg), defendants have argued that there could be no reliance on either the Form S–3 or the Form 10–K because the deals took place prior to the signing and filing of these reports. Plaintiffs point out that the press release announcing the results for fiscal year 1999 was issued on February 9, 2000 before the Dictaphone transaction was consummated. Hence, with respect to these cases, liability turns on whether the directors are liable under Section 20(a) for the press release.

§ 10(b) claim against audit committee members).

■ With respect to the claim of § 20(a) liability, plaintiffs have made sufficient allegations of control of the primary violators by Chairman Vandendriessche and the other members of the Audit Committee with respect to the 1999 financial statements and SEC filings for fiscal year 1999.

Section 20(a) provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a)(2000).

■ To establish a § 20(a) claim a plaintiff must plead "(1) an underlying violation by a controlled person or entity; (2) the defendants controlled the violator." *Aldridge v. A.T. Cross*, 284 F.3d 72, 85 (1st Cir.2002). The First Circuit has recognized, but not weighed in on, a split among circuit courts as to whether a plaintiff must also plead that "the defendants are in a meaningful sense culpable participants in the fraud in question." *Id.* at 85 n. 6 (comparing *SEC v. First Jersey Secs. Inc.*, 101 F.3d 1450, 1472 (2d Cir.1996) (applying such a requirement) with *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir.1990) (en banc) (rejecting the requirement)). However, it has recently stated, "control is a question of fact that 'will not ordinarily be resolved summarily at the pleading stage.'" *In re Cabletron Systems, Inc.*, 311 F.3d 11, 40 (1st Cir.2002) citing 2 T.L. Hazen, *Treatise on the Law*

*of Securities Regulation* § 12.24(1) (4th ed.2002).

■ Control "means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person …." 17 C.F.R. § 240.12b–2. "To meet the control element [of a § 20(a) claim], the alleged controlling person must not only have the general power to control the company, but must also actually exercise control over the company." *Aldridge*, 284 F.3d at 85. "[D]irector status alone does not constitute control." *In re Livent Sec. Litig.*, 78 F.Supp.2d 194, 221 (S.D.N.Y.1999). "Nor does membership on an audit committee by itself." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 437 (S.D.N.Y.2001).

Some courts have held that Audit Committee members who sign a company's financial documents are control persons for purposes of § 20(a) liability for the company's financial reports and SEC registration statements because:

[a]n outside director and audit committee member who is in a position to approve a corporation's financial statements can be presumed to have 'the power to direct or cause the direction of the management and policies of' the corporation, at least insofar as the 'management and policies' referred to relate to ensuring a measure of accuracy in the contents of company reports and SEC registrations that they actually sign.

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d at 437; *see also In re Reliance Sec. Litig.*, 135 F.Supp.2d 480, 518 (D.Del.2001) (finding that control status was a "genuine issue of material fact" when an outside director "served on subcommittees related to the oversight of [the company's] accounting and reporting practices."); *Jacobs v. Coopers & Lybrand, LLP*, Fed. Sec. L. Rep. ¶ 90,443, 1999 WL

101772, *18 (S.D.N.Y.1999) ("[T]hough his status as a director who allegedly served on the audit committee alone would not raise the inference that Hirsch was a § 20(a) controlling person, the allegation that he signed a fraudulent 10–K form does raise this inference . . . .").

Plaintiffs have sufficiently alleged that the Audit Committee members, Cauweiler, DePauw, and Vandendriessche, possessed and exercised control over L & H with respect to the financial reports and SEC filings. Allegations sufficient to demonstrate the Audit Committee members' control of L & H financial reports include: (1) signatures by the members on L & H's SEC filings; (2) the Audit Committee's ability to retain accounting and legal advisors to investigate the accounting improprieties alleged; (3) the Audit Committee's power to force the resignation of the Senior Officers; (4) their access to L & H's financial information; (5) their frequent meetings with KPMG to discuss L & H's financial reporting; and (6) that by August 30, 1999 the Audit Committee was meeting to review the financial statements with KPMG, and would take the same action and review each quarterly financial statement *before* its release (¶ 290, 393).

Accordingly, the Court **DENIES** the motion to dismiss the 10b–5 and § 20(a) claims against the three members of the Audit Committee.

#### 2. *Vanderhoydonck*

Plaintiffs allege that Francis Vanderhoydonck, a board member, violated § 10b when he sold 163,000 shares of L & H common stock (100 per cent of his total holdings) for $3.2 million in May 2000 while in the possession of material nonpublic information concerning L & H. *See*

*United States v. O'Hagan,* 521 U.S. 642, 651–52, 117 S.Ct. 2199, 2207, 138 L.Ed.2d 724 (1997) (holding that " § 10(b) and Rule 10b–5 are violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information."); *In re Fidelity/Micron Securities Litigation,* 964 F.Supp. 539, 545 (D.Mass.1997) ("Corporate insiders are held to fiduciary standards to prevent them from taking unfair advantage of uninformed investors.") Under the disclose-or-abstain rule, "an individual corporate insider in possession of material nonpublic information is prohibited by the federal securities laws from trading on that information unless he makes public disclosure." *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1202 (1st Cir.1996). Allegations of insider trading "in suspicious amounts or at suspicious times" may permit an inference that the trader possessed material nonpublic information at the time. *Id.*

The class complaint alleges Vanderhoydonck, the President and Managing Director of defendant LHIC,[6] was aware of the SEC investigation into L & H accounting practices, which had expanded in April 2000, and hoped to take advantage of the high stock price following the May 9, 2000 press release announcing record results for the first quarter of 2000 due largely to the (fictitious) revenue from Korea before the SEC probe became public. (¶ 471). In evaluating these burgeoning Korean revenues, a reasonable shareholder would have found it very significant that the SEC was investigating L & H's revenue recognition practices. *See SEC v. MacDonald,* 699 F.2d 47, 49 (1st Cir.1983) (holding that proper standard for determining whether an omitted fact was material in a Rule 10b–5 case is whether the inside informa-

---

**6.** LHIC is the Belgian Investment Fund funded by defendants Lernout and Hauspie in 1998.

tion would have assumed actual significance in the deliberations of a reasonable shareholder).

The timing and amount of Vanderhoydonck's sale, together with his role at LHIC, buttress the strong inference that he knew about the SEC investigation. The motion to dismiss based on the 10b–5 insider trading claim is *DENIED*.

However, the § 20(a) claim against Vanderhoydonck is *DISMISSED* because there are inadequate allegations of control by the outside directors. *See infra* Section 5.

### 3. *Ellen Spooren*

█ Plaintiffs allege that defendant Ellen Spooren engaged in unlawful insider trading in violation of § 10(b) and Rule 10b–5 when she sold all her shares of L & H stock in two sets of transactions from November 23, 1998 through November 30, 1998 and from May 15, 2000 through May 25, 2000 (¶¶ 465, 469). They also allege that lead plaintiff Karl Leibinger purchased 17,000 shares of L & H common stock in that period, thereby satisfying any contemporaneous trading requirement of § 20A of the Securities Exchange Act of 1934, 15 U.S.C. § 78t–1. (¶ 20). To state a claim under § 20A, plaintiffs must allege that: (1) a corporate insider traded; (2) plaintiff traded contemporaneously with the insider; and (3) the insider traded while in possession of material non-public information. *See Simon v. American Power Conversion Corp.*, 945 F.Supp. 416, 436 (D.R.I.1996).

█ With respect to the November 28, 1998 sale, the claim does not survive the high scienter barrier. As the Vice President for Communications, Spooren was not necessarily the kind of corporate insider with knowledge of, or access to, reports of accounting irregularities, revenue overstatements or related party transactions.

The May 2000 sales present a much closer question because they are sandwiched tightly in between an expanding SEC probe from January to April 2000, when it requested documents from KPMG, and the *Wall Street Journal* investigation into the Korean sales, which Spooren was aware of and worried about two weeks after her sale in June 2000. She was also involved in responding to another *Wall Street Journal* article in May 2000. The complaint alleges Spooren was aware of the SEC probe. (¶ 471). Plaintiffs argue that knowledge of the SEC probe put her on notice that the company's financial statements were significantly overstated during the class period. In addition, they point to the suspicious timing of the sale and the fact that Spooren sold 100 percent of her remaining stock (50,000 shares for $1.88 million). These allegations—knowledge of the SEC probe, the timing of the sale and the amount—are sufficient to create a strong inference of scienter to support an insider trading claim.

Accordingly, the motion to dismiss is *ALLOWED* with respect to the November 1998 sale, but not the May 2000 sale.

### 4. *Roehl Pieper (The Baker/Bamberg Litigation)*

The Bakers assert claims against Roehl Pieper for alleged violations of § 10(b) of the Exchange Act, as well as common law fraud and negligent misrepresentation.

#### A. *The Section 10(b) claim.*

The Bakers sold their interests in Dragon Systems, Inc. in exchange for L & H shares of stock pursuant to a March 27, 2000 Merger Agreement. Pieper played a significant role for L & H on the Dragon transaction deal team. (Consolidated Complaint ¶ 113). A resident of the Netherlands, Pieper had traveled to the United

States to meet with the Bakers and other shareholders to discuss the potential merger in October 1999. The Bakers allege that Pieper, who actually did not become a Board member until June 2000, fraudulently stated to the Bakers in October 1999 that he had "personally checked out" L & H's financial soundness in some meetings in the fall 1998 and that he "emphasized strong financial results and growing revenues." (Consolidated Complaint ¶¶ 113, 116).

The Baker plaintiffs also allege generally that the L & H defendants knew of the pending SEC investigation, "which focused on L & H's revenue recognition practices and in particular, on the company's contract and relationships with its so-called 'strategic partners,'" and misrepresented to the Bakers that the SEC investigation had been fully resolved. (Consolidated Complaint ¶¶ 122–123). Plaintiffs allege that by virtue of his role as Vice Chairman (a false assumption), Pieper had access to information contradicting his statements regarding L & H's financial integrity and that he had access to L & H's financial information.

■ Plaintiffs do not allege facts sufficient to create a strong inference of scienter for defendant Pieper with respect to the "soft" statements regarding the financial soundness of the company in the fall 1999. Back then, Pieper was a member of the transaction team but not a corporate insider. Indeed, it was reasonable for a non-insider to be rosy-eyed then. His position on the transaction team does not create a strong inference of scienter. *See Maldonado v. Dominguez,* 137 F.3d 1, 10 (1st Cir.1998) ("general inferences that [defendants] 'must have known' about the risks ... are precisely the types of infer-

ences which this court, on numerous occasions, has determined to be inadequate to withstand Rule 9(b) scrutiny").

■ The specific allegation regarding the SEC investigation presents a somewhat different question. The complaint alleges that L & H defendants told the Bakers that the SEC investigation was concluded, when they knew it was not.[7] (Consolidated Complaint ¶ 122). However, there is no allegation specifying that Pieper knowingly made false allegations about the SEC investigation. Accordingly, this generic allegation is not made with adequate particularity. The Motion to Dismiss Bamberg/Baker plaintiffs' § 10(b) claim against Pieper is *ALLOWED*.

### B. *Section 20(a) claim.*

There are also allegations of control liability under § 20(a). Pieper was not even a director at the time of the transaction, and in any event, mere status as a director, without more, is not sufficient to create control liability. It is *DISMISSED*.

### C. *State claims.*

■ The Baker/Bamberg Consolidated Complaint also asserts common law fraud and negligent misrepresentation claims based on Pieper's statements. Many courts have held that vague, soft statements are not actionable because reasonable investors do not rely on them in making investment decisions. *See Shaw,* 82 F.3d at 1217 ("[C]ourts have demonstrated a willingness to find immaterial as a matter of law a certain kind of rosy affirmation commonly heard from corporate managers...."); *In re Advanta Corp. Securities Litigation,* 180 F.3d 525, 538 (3d Cir.1999) ("vague and general statements

---

**7.** I have had difficulty following the Baker/Bamberg plaintiffs' allegations because the citations to the complaint do not precisely match mine. I have been using the consolidated complaint (Docket No. 29). *See e.g.* Letter dated August 7, 2002 (Docket No. 103).

of optimism constitute no more than puffery and are understood by reasonable investors as such."); *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1119–24 (10th Cir. 1997) (holding that statements that company had experienced "substantial success" and other such comments "immaterial as a matter of law."). I agree that any reliance on Pieper's vague statements would not be reasonable and would be unimportant to a reasonable investor in light of the total mix of information available, including the written and oral assurances of KPMG and S.G. Cowen. *See EP Medsystems, Inc. v. EchoCath, Inc.,* 235 F.3d 865, 875 (3d Cir.2000) (recognizing that where alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds could not differ on the question of materiality, dismissal is warranted as a matter of law at the pleading stage).

### 5. *The Outside Directors: Cloet, Coene, Detremmerie, Vieux, Van Acker and Vergnes*

The outside directors are Vanderhoydonck, Fernand Cloet (also the director of the defendant FLV fund, who signed the 1999 Form 10–K), Jan Coene, Hubert Detremmerie, Alex Vieux, Microsoft's Designee and Chairman of Microsoft Europe, and Girard Van Acker. Plaintiffs assert only § 20(a) claims against each of the Outside Directors, except Vanderhoydonck. (¶¶ 499–502).

Plaintiffs have not made sufficient allegations that the other outside directors possessed and exercised control over L & H under the *Aldridge* standard. Plaintiffs claim that 1) the Outside Directors had access to confidential L & H information through Board Meeting presentations, which included a May 4, 1998 meeting that disclosed "a potential conflict of interest" between L & H and FLV (¶ 396); 2) that

the Board met with KPMG representatives; 3) that the Board authorized the distribution of L & H's financial statements; 4) that the Audit Committee reported to the Board of Directors; and 5) that the Board discussed some new L & H contracts. As stated above, status as a director is not enough to meet the threshold pleading requirements for a § 20(a) claim. *See In re Livent Sec. Litig.,* 78 F.Supp.2d at 221. Plaintiffs' allegations do not go beyond the run-of-the-mill duties of a director of a large corporation.

To these allegations, plaintiffs add that certain of the Outside Directors (Detremmerie, van Acker, Vanderhoydonck, and Cloet) signed filings to the SEC which contained fraudulent information. Signatures are one factor supporting a control allegation, but plaintiffs must show signatures plus other indicia of control. *See In re Oxford Health Plans, Inc. Sec. Litig.,* 187 F.R.D. 133, 143 (S.D.N.Y.1999) (finding that four of the outside directors were control persons based on their director status *combined* with their equity interests in the corporation and their intimate knowledge of the day-to-day operations of the company); *In re Independent Energy Holdings PLC Sec. Litig.,* 154 F.Supp.2d 741, 772 (S.D.N.Y.2001) (finding director status plus equity interest plus signature on fraudulent prospectus stated sufficient allegation of control); *In re ValuJet, Inc. Sec. Litig.,* 984 F.Supp. 1472, 1480 (N.D.Ga.1997) (finding outside director who was also founder and signed SEC filing to be control person); *Degulis v. LXR Biotechnology, Inc.,* 928 F.Supp. 1301, 1315 (S.D.N.Y.1996) (holding that plaintiffs had adequately pled defendants' control and authority by detailing their ability to control the acts of the issuers, their control over the contents of the offering documents, as well as their signatures on those documents). In each of these cases, the courts relied both on the special

status of the outside director (e.g., audit committee member, equity shareholder) *and* their involvement with the financial statements of the company in finding the director to be a control person.

The distinction lies in the director's ability to control the content of the financial documents. Where the director has some special status within the corporation, such as membership on an Audit Committee, and has the power to exercise content control over financial documents, the director's signature on the SEC filing might suffice for pleading purposes to establish the *exercise* of control over the contents of the financial statements. Where the defendant's status is merely that of outside director, however, the defendant's signature on the SEC filing does not necessarily constitute an exercise of any power or control over its contents.

Therefore, plaintiffs have not sufficiently alleged that the individual outside directors possessed and exercised control over L & H. Plaintiffs' § 20(a) claims against Cloet, Coene, Detremmerie, Vieux, van Acker, Vergnes, and Vanderhoydonck are *DISMISSED*.

### 6. *RVD Securities*

Plaintiffs press two claims against RVD. First, they maintain that RVD is liable under § 20(a) as a control person for its activities on the L & H Board. Second, plaintiffs seek to hold RVD liable for the activities of Vandendriessche as a control person at L & H. (¶ 529).

RVD Securities meets the definition of a control person under § 20(a). RVD "sat" on L & H's Board of Directors through its agent, Vandendriessche. Vandendriessche possessed no other status on the L & H Board or on the Audit Committee other than that possessed by RVD. In other words, at least for the purposes of the motion to dismiss, when Vandendriessche

acted as Chair of the Audit Committee, RVD essentially acted as Chair. When Vandendriessche signed the S–3 Registration Statement, he signed his name below the caption "RVD SECURITIES N.V., represented by Erwin Vandendriessche." When L & H listed its Board Members in its Form 10–K, it listed "RVD SECURITIES N.V., represented by Erwin Vandendriessche" followed by footnotes that stated "Member of the Audit Committee" and "Corporations may serve as directors of Belgian companies." (L & H 1999 Form 10–K, p. 70.)

RVD, through Vandendriessche, thus sat on the Audit Committee and signed the S–3 Registration Statement incorporating by reference the fraudulent 1999 Form 10–K. Plaintiffs have adequately stated a claim for § 20(a) liability against RVD.

### 7. *Microsoft*

Because plaintiffs have not made allegations sufficient to establish Vergnes as a control person under § 20(a) Microsoft may not be held liable under a respondeat superior theory. *See In re Atlantic Fin. Mgmt., Inc.*, 784 F.2d 29, 31 (1st Cir.1986) (analyzing relationship between § 20(a) and principles of liability in agency law). Plaintiffs' claim against Microsoft is dismissed.

### *ORDER*

For the reasons stated above, the Court:

1. *ALLOWS* Defendant Roehl Pieper's motion to dismiss the Baker/Bamberg complaint (Civil Action No. 10305, Docket Nos. 42, 69);

2. *DENIES* Defendant Ellen Spooren's motion to dismiss the insider trading claim (Civil Action No. 11489, Docket No. 197) with respect to the May 2000 sale, but *ALLOWS* the motion to dismiss with respect to the November 1998 sale;

3. **DENIES** Defendant Francis Vanderhoydonck's motion to dismiss (Docket No. 181) with respect to the § 10(b)(5) insider trading claim but **ALLOWS** the motion with respect to the § 20(a) claim;

4. **ALLOWS** the motion to dismiss the first consolidated and amended class action complaint (Docket No. 174) against outside director defendants (Docket No. 175) with respect to Cloet, Coene, Detremmerie and Van Acker and **DENIES** the motion with respect to RVD Securities N.V., Vandendriessche, Cauweiler and DePauw.

5. **DENIES** the motion of Defendants Erwin Vandendriessche, Dirk Cauweiler and Marc DePauw to dismiss the Stonington complaint (Docket No. 68);

6. **ALLOWS** Defendant Bernard Vergnes' motion to dismiss (Docket No. 209);

7. **ALLOWS** the motion to dismiss of Defendant Microsoft Corporation (Docket No. 211).