Haidee **IRAGORRI**, etc.,
Plaintiff, Appellant,

v.

**INTERNATIONAL ELEVATOR,**
**INC.,** Defendant, Appellee.

No. 99–1188.

United States Court of Appeals,
First Circuit.

Heard Dec. 6, 1999.

Decided Jan. 28, 2000.

---

Anthony J. Natale, with whom Julie C. Molloy and Pepe & Hazard LLP were on brief, for appellant.

Catherine R. Connors, with whom Jared L. Tardy and Pierce Atwood were on brief, for appellee.

Before SELYA, BOUDIN and LYNCH, Circuit Judges.

SELYA, Circuit Judge.

After Mauricio Iragorri plummeted down an elevator shaft to his death, his widow sued various entities, including International Elevator, Inc. (IEI), alleging culpable negligence.[1] The United States District Court for the District of Maine dismissed the claim against IEI on forum non conveniens grounds. Discerning no abuse of discretion, we affirm.

## I. BACKGROUND

A native of Colombia, Iragorri emigrated to the United States with his wife and two young children in the early 1980s. The family settled in Florida, and all four

---

1. Mrs. Iragorri sued in her own right and on behalf of her late husband's estate and heirs. The district court treated her as the sole plaintiff, but nonetheless considered the interests of the Iragorri children. We emulate this approach.

became naturalized citizens in 1989. In the fall of 1992, the children, then teenagers, were participating in an educational exchange program arranged by their Florida high school, and the appellant was living with them in Bogota. Iragorri also was in Colombia.

## A. *The Accident.*

The following events took place during the early morning hours of October 3, 1992. Shortly after 1:00 a.m., Iragorri entered the Portada del Mar, a partially finished apartment building in Cali, to visit his mother. The doorman, Danilo Osorio Garcia (Osorio), informed him that the elevators were out of order. Iragorri took the stairs to the fifth floor. The record is tenebrous concerning his condition; Osorio initially told investigators that Iragorri was inebriated, but later testified that he seemed fine.

About ten minutes after Iragorri's arrival, Osorio heard a loud noise. Upon investigation, he claims to have found a screwdriver holding open the elevator doors on the fifth floor. He then heard moans emanating from the elevator shaft and discovered that Iragorri had plunged to the bottom, sustaining fatal injuries.

## B. *IEI's Role.*

IEI was incorporated in Maine in 1924, as a subsidiary of Otis Elevator (Otis). Otis divested itself of its South American interests in 1988, spinning off IEI in the process. From that point forward, IEI operated exclusively in South America (although it retained its Maine charter). It still distributes and services Otis elevators. Although IEI did not install the elevators that serve the Portada del Mar complex, it did contract to maintain them.

Roughly six hours before Iragorri entered the premises, Osorio called IEI to

report that both of the building's elevators were out of order. An IEI employee, Gerardo Ortiz, responded promptly and determined that the cable on the left-hand elevator had snapped and that the elevator itself was in the basement. He proceeded to the fifth floor, opened the elevator doors, and worked on the right-hand elevator. When he was through, he claims to have closed the doors. He then went to the basement to inspect the downed left-hand elevator. Once there, he concluded that he would not be able to complete the repairs that day. He showed Osorio what was wrong with both elevators and asked Osorio to turn off the power pending his return. When questioned by officials, Ortiz could not explain how a screwdriver became wedged in the elevator doors (if, indeed, that was the case).

## C. *The Litigation.*

Mrs. Iragorri brought a wrongful death action against a number of defendants in the United States District Court for the District of Connecticut. All the defendants moved to dismiss. The court retained jurisdiction over the claims against Otis and United Technologies (Otis's corporate parent),[2] but determined that IEI was not subject to *in personam* jurisdiction in Connecticut and therefore transferred the case against it to Maine. *See* 28 U.S.C. § 1404(a). Apart from the fact that IEI had been incorporated in Maine (and was, therefore, amenable to service there), neither party had any significant contacts with that jurisdiction. When IEI moved for dismissal in the transferee court, the district judge referred the motion to a magistrate judge, *see* Fed.R.Civ.P. 72(b), who recommended granting it on forum non conveniens grounds. Mrs. Iragorri objected. The district court, affording de novo review, approved the magistrate's report and recommendation.[3] This appeal ensued.

2. The court eventually dismissed these claims on the ground of forum non conveniens. *See Iragorri v. United Techs. Corp.,* 46 F.Supp.2d

159, 169 (D.Conn.1999). That decision is presently on appeal to the Second Circuit.

3. Because the district judge adopted the magistrate's report without embellishment, we do

## II. STANDARD OF REVIEW

■ Apart from errors of law, forum non conveniens determinations "may be reversed only when there has been a clear abuse of discretion." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Such an abuse transpires if the *nisi prius* court (1) fails to consider a material factor; (2) relies substantially on an improper factor; or (3) assesses the appropriate factors but clearly errs in weighing them, with the result that its assessment falls outside the universe of plausible outcomes. *See Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 719 (1st Cir.1996); *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 423 (1st Cir.1991) (*Mercier I*). In administering this test, a reviewing court must assiduously avoid twin temptations: it must neither substitute its judgment for that of the district court nor strike the balance of relevant factors anew. *See Piper*, 454 U.S. at 257, 102 S.Ct. 252.

## III. DISCUSSION

■ When a defendant moves for dismissal on forum non conveniens grounds, it bears the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum. *See Mercier I*, 935 F.2d at 423–24. Courts generally deem the first requirement satisfied if the defendant demonstrates that the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amenable to service of process there. *See Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. 252. The second requirement evokes a more sophisticated balancing: the defendant must show that the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839,

91 L.Ed. 1055 (1947); *Mercier I*, 935 F.2d at 423–24.

■ The Supreme Court has provided substantial guidance on the nature of the factors to be assayed in the second step of the analysis. Considerations relevant to the litigants' private interests include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [and the] possibility of view of premises, if view would be appropriate to the action." *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839. Evaluating private interests also requires the trial judge to pay heed to "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* We have no doubt that the flip side of this coin has equal pertinence; the judge must consider those factors that threaten to make trial more cumbersome, prolong it, or drive up costs. Factors relevant to the public interest include such things as the administrative difficulties of docket congestion; the general goal of "having localized controversies decided at home," and concomitantly, ease of access to the proceedings on the part of interested citizens; the trier's relative familiarity with the appropriate rules of decision; and the burdens of jury duty. *Id.* at 508–09, 67 S.Ct. 839.

■ In all events, as to both private and public interests, flexibility is the watchword. *See Piper*, 454 U.S. at 249–50, 102 S.Ct. 252. The compendia provided by the Court comprise a helpful starting point, but not every item applies in every case and, in the last analysis, the list of factors is illustrative rather than all-inclusive. "[T]he ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

not distinguish between the two judicial officers, but refer to the decision below as the

district court's.

With this brief preface, we test the district court's decision against the two-step framework.

## A. *Adequate Alternative Forum.*

In considering a forum non conveniens claim, an inquiring court should begin by determining the existence *vel non* of an adequate alternative forum for the prosecution of the action.[4] The court below impliedly concluded that Colombia constitutes such a forum. The appellant assails this conclusion on two bases.

As an initial matter, the appellant complains that the district court failed to afford due consideration to her family's apprehensions anent their personal safety should they be forced to litigate in Colombia. In her view, the attendant dangers, as evidenced by the State Department's advisory against unnecessary travel (especially to Cali), make Colombia an inadequate or unavailable alternative to the United States for the purpose of litigating her claim.

The district court explored this argument at some length.[5] In the end, it found no particularized evidence that travel to Colombia would imperil the Iragorris, and, relatedly, found much evidence that they would be able to negotiate the country more easily than ordinary American visitors. These factors, the court concluded, neutralized the force of the State Department's warning. We cannot term this judgment unreasonable.

There are, of course, cases in which courts have discussed the possibility that the dangers inherent in traveling to a proposed forum might make litigation there a practical impossibility (and, thus, no real alternative). *See, e.g., Rasoulzadeh v. Associated Press,* 574 F.Supp. 854, 861 (S.D.N.Y.1983), *aff'd,* 767 F.2d 908 (2d Cir. 1985). *But see Guidi v. Inter–Continental Hotels Corp.,* No. 95 CIV. 9006 LAP, 1999 WL 228360, at *3–4 (S.D.N.Y. Apr.20, 1999) (limiting *Rasoulzadeh* to cases in which danger implicates the plaintiff's access to the alternate justice system). Nevertheless, it is the trial judge who best appreciates the case's nuances and the parties' circumstances, and the appellant points to no case in which an appellate tribunal has found overarching danger despite a trial court finding that the proposed forum constituted a viable alternative. The record reflects no basis to make this case the first.

In a nimble attempt to sidestep this reality, the appellant lodges a claim of legal error: she asseverates that certain of the items cited by the district court as evidence that Colombia's dangers were less inhibitory to her and her children— e.g., their previous Colombian citizenship, their residence in Colombia in 1991 and 1992, their family ties (the record mentions close relatives on both sides of the family who live in Colombia), the children's tenure as exchange students, and their conversance with the Spanish language—were improperly factored into the equation. We do not agree. A plaintiff's familiarity with the alternative forum, her comfort level there, and her fluency in the language used in its courts may be weighed in deciding a forum non convenience motion. *See Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.,* 906 F.2d 45, 52–53 (1st Cir.1990); *see also*

---

4. The district court blended the "adequacy of forum" and "balance of interests" analyses, thus violating this precept. While such informality is disfavored, we deem the court's error harmless in this instance, for the court ultimately made a sufficiently distinct determination on each point.

5. The appellant proffered, and the district court mulled, a travel advisory issued on March 26, 1998, wherein the State Department "warn[ed] U.S. citizens against unnecessary travel to Colombia," noting that "[v]iolence by narcotraffickers, guerrillas, paramilitary groups and other criminal elements continues to affect all parts of the country [and that] U.S. citizens have been the victims of recent threats, kidnappings and murders." The advisory singled out Cali for special attention "due to the heightened threat in that city."

Marc O. Wolinsky, Comment, Forum Non Conveniens and American Plaintiffs in the Federal Courts, 47 U. Chi. L.Rev. 373, 382–83 (1980) (positing that American citizenship is a factor in favor of plaintiffs'· convenience only insofar as it is a proxy for "geography, language barriers, and unfamiliarity with foreign systems") (cited with approval in *Piper*, 454 U.S. at 256 n. 24, 102 S.Ct. 252). Although these factors more often relate to the second-stage balancing, we believe that in light of the appellant's contention that she and her children could not safely travel to Colombia, the court reasonably deemed them relevant to the suitability of the proposed alternative forum. It follows that, on the peculiar facts of this case, the district court did not commit an abuse of discretion in assigning diminished weight to the State Department's advisory.

 The second strand of the appellant's argument derives from a footnote in which the *Piper* Court stated that if "the remedy offered by the other forum is clearly unsatisfactory; the other forum may not be an adequate alternative." 454 U.S. at 254 n. 22, 102 S.Ct. 252. Using footnote 22 as a springboard, the appellant asserts that the lack of an adequate remedy under Colombian law renders a Colombian forum inconcinnous for purposes of this case.[6] Refined to bare essence, this assertion boils down to a claim that the Colombian Supreme Court occasionally has limited damages for pain and suffering in wrongful death actions (called "moral damages" there) to amounts that seem paltry when converted into United States dollars.

The lower court's weighing of the proof on this point withstands scrutiny. The court found no credible evidence of an artificial ceiling on provable economic loss

applicable to wrongful death actions brought in Colombia and, relatedly, found no credible evidence to support the appellant's suggestion that a lid of some sort applies generally in such cases. At worst, a plaintiff forced to litigate a wrongful death action in Colombia rather than in an American jurisdiction faces a downgrade in remedy, i.e., an institutional inhospitability to generous awards for non-economic losses. This circumstance, in and of itself, does not impugn the adequacy of the proposed alternative forum. *See, e.g., id.* at 255, 102 S.Ct. 252 (holding that the unavailability of a cause of action for strict liability does not render the alternate forum inadequate); *Ahmed v. Boeing Co.,* 720 F.2d 224, 226 (1st Cir.1983) (stating that the unsatisfactory remedy exception applies only "where transfer to a foreign forum means application of a substantive law that is both different and basically unjust").

We need not tarry. Here, the district court supportably found that the Colombian courts entertain wrongful death actions, that they grant both pecuniary and moral damages in such suits, that the statute of limitations had not expired in Colombia, and that IEI was amenable to service of process there. It also found the appellant's evidence of unfavorable changes in the law to be weak, disputed, and ultimately unconvincing. No more is exigible to sustain the court's determination that an adequate alternative forum exists. *Cf. Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. 252 (predicting that footnote 22 would come into play only "[i]n rare circumstances").

## B. *Private and Public Interests.*

Having verified the district court's implicit conclusion that an adequate alterna-

---

6. The parties seem to assume that evidence of a particular forum's less favorable law is germane only if the difference is extreme, and that even then the evidence relates only to the forum's adequacy. But *Piper* does not stand for so wooden a rule, and its language, fairly read, allows trial courts to give an unfavora-

ble change in law some small weight at the second stage of the forum non conveniens inquiry insofar as it is relevant. *See Piper,* 454 U.S. at 247, 102 S.Ct. 252; *see also Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1247 n. 10 (7th Cir.1990).

tive forum exists, we turn to the second stage of the inquiry. Before reaching the merits, however, we must address a threshold matter.

■ The second-stage inquiry, as we have said, directs the trial court to balance an array of factors relevant to both private and public interests, and to ascertain whether that balance justifies dismissal. The usual formulation of the rule of decision, adopted by the district court, focuses on the defendant's ability to prove that the result of the balancing "strongly favor[s]" the alternative forum. *Mercier I*, 935 F.2d at 423–24. The appellant challenges this formulation and suggests that a trial court should not dismiss for forum non conveniens "except upon a clear showing of facts" that makes the plaintiff's preferred forum inappropriate because they "establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience." *Koster*, 330 U.S. at 524, 67 S.Ct. 828 (dictum).

In our view, the lower court's decision demonstrates an awareness of the appropriate legal standards for forum non conveniens analysis. The *Koster* Court's use of the term "oppressiveness and vexation" neither created an independent standard nor raised the bar for dismissal in forum non conveniens cases. *See Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 151–52 (2d Cir.1980) (en banc); *Pain v. United Techs. Corp.*, 637 F.2d 775, 783 (D.C.Cir. 1980); *cf. Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 42, 44 (3d Cir.1988) (quoting *Koster* and then summarizing the applicable standard as imposing a burden to show that the aggregate of relevant factors "weigh[s] heavily on the side of dismissal"). Lower courts often must tease a standard from a plethora of phrases that collectively describe a legal principle, and the court below correctly divined that, at the second stage of the inquiry, a defendant's right to obtain a dismissal on forum non conveniens grounds hinges on whether it can show that considerations of convenience and judicial efficiency strongly favor the proposed alternative forum. After all, the "strongly favors" language has deep roots in Supreme Court precedent, *see Gilbert*, 330 U.S. at 508, 67 S.Ct. 839, and the Court's subsequent mentions of the *Koster* dictum lend no support to the notion that the dictum somehow supplanted the "strongly favors" test. *See, e.g., Norwood v. Kirkpatrick*, 349 U.S. 29, 35, 75 S.Ct. 544, 99 L.Ed. 789 (1955). This court heretofore has used the "strongly favors" standard as a distillation of the "oppressiveness and vexation" language, *see Mercier I*, 935 F.2d at 423–24, and we continue to believe that this is the proper perspective.

■ This brings us to the balancing of the relevant private and public interests. We start by acknowledging the thoroughness of the district court's canvass; it thoughtfully discussed all the pertinent factors cited by the parties and reacted to each item. On a more global note, the court explained why convenience, efficiency, and fairness all militated in favor of a trial in Colombia. It emphasized that the accident had occurred there and that Ortiz and Osorio—the two principal witnesses on liability—would play leading roles at trial. The court remarked the need to gauge these witnesses' credibility and stressed the salience of demeanor evidence in that endeavor. It then observed that neither witness could be compelled to attend a trial in Maine and that, in any event, both men were Spanish speakers. In addition, the court noted that, should the case proceed in Maine, IEI would be unable to implead other potentially responsible parties, that it would be impossible to conduct a view, and that unfamiliar law would supply the substantive rules of decision. Considering these and other factors, the court determined that the balance of private and public interests strongly favored recourse to a Colombian forum.

The appellant's attack on this determination occurs on several fronts. First, she declares that the court gave lip service to,

but did not enforce, IEI's burden of proof. In an effort to document this *ipse dixit,* she asserts that the court expressed some ambivalence, stating at one point that "neither forum alternative in this case is particularly satisfactory," yet nonetheless granted IEI's motion to dismiss.

We do not think that this allusion undermines the district court's ruling. First, the quoted statement is not necessarily at odds with the use of the correct standard. *See infra* at 16–17. Second, since other references in the decision make it plain that the court fully understood the operative legal principles, even an infelicitous choice of phrase would not warrant reversal. *See Lenn v. Portland Sch. Comm.,* 998 F.2d 1083, 1087–88 (1st Cir.1993); *Clauson v. Smith,* 823 F.2d 660, 663 n. 3 (1st Cir.1987); *United States v. Kobrosky,* 711 F.2d 449, 456 (1st Cir.1983). The lower court's rescript makes pellucid its awareness of the correct burden of proof, and it reached a result that was entirely consonant with that burden. In such circumstances, we decline to presume that the court said one thing and did another.

The appellant next asserts that the district court failed to consider the public interest that attaches to resolving a wrongful death action brought by United States citizens in a federal court. Here, too, her argument borders on the metaphysical. The district court mentioned the tenet that a United States court has a particular interest in an action brought by a citizen, *see Mercier I,* 935 F.2d at 429–30, and proceeded to weigh the appellant's, her children's, and her decedent's citizenship in the balance. The court also noted, however, that a plaintiff's lack of relationship to the forum state may diminish the ultimate influence of this interest. This countervailing consideration was properly added to the mix both as a matter of legal theory, *see Mercier v. Sheraton Int'l, Inc.,* 981 F.2d 1345, 1355 (1st Cir.1992) (*Mercier II* ), and as a matter of fact (given Maine's tenuous relationship to the case). Thus, the appellant's plaint, stripped of rhetori-

cal flourishes, is less that the district court *overlooked* a factor and more that the court chose to synthesize several related factors. We see no abuse of discretion in the court's handling of this aspect of the case.

The appellant also maintains that the district court overemphasized the importance of the testimony to be given by Ortiz and Osorio, and impermissibly discounted the witnesses that she planned to call (who, she said, would refuse to appear in Colombia because of incipient danger there). Once again, the court explicitly addressed these concerns. It recognized that trial in Colombia likely would dissuade certain witnesses from appearing in person, but found that the problems of proof would be exacerbated, not ameliorated, by a trial in Maine (where crucial liability witnesses whose credibility was under attack most likely would appear, if at all, by video deposition with the assistance of a translator). In the court's view, the language barrier would prevent an American jury from evaluating their credibility effectively. The appellant's suggested witnesses were experts, concerned primarily with damages, and the court decided that their testimony would be more amenable to depositions and translation (if, indeed, local experts could not be retained).

This is a judgment call, pure and simple, and illustrates the wisdom of granting the district court a margin of discretion in the area of forum non conveniens. The trial judge is in the best position to know the interstices of any particular case and to evaluate both the parties' interests and the likely efficacy of the truth-finding process. *See Gilbert,* 330 U.S. at 508, 67 S.Ct. 839. Given the standard of review, it is not within our proper purview to disturb a trial court's reasoned, record-rooted determination that justice could be done more perfectly in a foreign forum than in an American jurisdiction because of the relative ease of communicating the most im-

portant (and the most controversial) testimony to the factfinder.

The case law supports such a result. For one thing, the facts as found by the district court closely parallel the situation in *Piper,* 454 U.S. at 257–58, 102 S.Ct. 252 (upholding a trial court determination that in spite of "private interests point[ing] in both directions ... fewer evidentiary problems would be posed if the trial were held in Scotland"). For another thing, we have emphasized in an analogous context that "the live testimony of [key] witnesses for the purposes of presenting demeanor evidence [is] essential to a fair trial." *Howe v. Goldcorp Invs., Ltd.,* 946 F.2d 944, 952 (1st Cir.1991). Indeed, on one occasion we approved a determination that because a particular witness's "credibility would be pivotal to any judicial resolution of the factual issues at the root of the parties' dispute ... deposition testimony and letters rogatory, even if available to the American court, would be less than satisfactory substitutes for in-person testimony." *Mercier II,* 981 F.2d at 1356. Finally, the Court has suggested that the availability of expert witnesses may not be as significant as the availability of fact witnesses. *See Gilbert,* 330 U.S. at 509, 67 S.Ct. 839. Given these authorities, we are unprepared to hold that the district court misused its discretion by dismissing the action in favor of an imperfect, but nonetheless highly preferable, forum.

■ As her parting shot, the appellant laments the district court's finding that her financial position was irrelevant to its decision. This jeremiad misconstrues the situation. In *Mercier II,* we affirmed a finding that an alternate forum was adequate in spite of economic impositions on the plaintiffs, noting that the plaintiffs were not indigent and that inquiry into their financial capability to bring suit in the proposed alternate forum did not reveal any insuperable obstacles. *See* 981 F.2d at 1353. On appeal, the appellant, unlike in *Mercier II,* raises the impecuniousness argument not in terms of the adequacy of the alternate forum, but, rather, in terms of the balance of convenience. We agree with her underlying premise: at the second stage of a forum non conveniens analysis, financial hardships may be relevant. Moreover, even if such a hardship does not make foreign litigation impossible, it nonetheless may constitute one of the "practical problems" that help to determine whether trial of a case in a given venue will (or will not) be convenient. *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839. That said, this avenue of inquiry proves a dead-end for Mrs. Iragorri.

■ The mere suggestion of greater financial strain is meaningless unless and until the plaintiff demonstrates the nature and extent of the supposed limitations upon her ability to litigate. Here, the appellant wholly failed to adduce any evidence of her financial resources (or the lack thereof). It is hornbook law that an appellate argument cannot survive the proponent's failure to supply a sufficient factual predicate for it. *See, e.g., Casa Marie Hogar Geriatrico, Inc. v. Rivera–Santos,* 38 F.3d 615, 618 n. 2 (1st Cir.1994); *United States v. Slade,* 980 F.2d 27, 30 (1st Cir.1992). So it is here.

■ We need go no further. The appellant has advanced a golconda of arguments in an effort to persuade us that the decision to dismiss the case on forum non conveniens grounds represented an abuse of discretion. Even given the presumption in favor of the plaintiff's choice of forum, *see Nowak,* 94 F.3d at 720—a presumption that the district court acknowledged and to which it paid obeisance—none of these arguments is convincing. That we, if writing on a pristine page, might have resolved the decisional calculus differently is of no moment. As the Supreme Court has written,

"where the [trial] court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper*, 454 U.S. at 257, 102 S.Ct. 252.

*Affirmed.*