Guy WARLOP, Plaintiff,

v.

Jo LERNOUT, et al., Defendants.

No. 05–CV–12058 (PBS).

United States District Court,
D. Massachusetts.

Feb. 12, 2007.

See also 208 F.Supp.2d 74.

Andrew D. Abramowitz, Rachel Koop, Robert M. Roseman, Spector, Roseman, & Kodroff, P.C., Philadelphia, PA, David S. Nalven, Thomas M. Sobol, Hagens Berman Sobol Shapiro LLP, Cambridge, MA, Mark S. Willis, Matthew K. Handley, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Seattle, WA, for Plaintiff.

Donald H. Chase, Morrison Cohen LLP, George A. Salter, Hoa T.T. Hoang, Nicholas W.C. Corson, Hogan & Hartson, LLP, New York City, Anthony B. Fioravanti, Sanford F. Remz, Yurko Salvesen & Remz, P.C., Thomas J. Gallitano, Jacob A. Labovitz, Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP, Michael J. Stone, Michael J. Cedrone, Peabody & Arnold LLP, Kevin J. Lesinski, Kristin G. McGurn, Seyfarth Shaw, LLP, Breton T. Leone–Quick, Peter M. Saparoff, Eoin P. Beirne, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA, Ada Fernandez Johnson, John B. Missing, Debevoise & Plimpton, LLP, Washington, DC, Michael P. Carroll, Michael S. Flynn, Sean C. Knowles, Sheila Vera Barrett, Davis, Polk & Wardwell, James B. Weidner, Jeff E. Butler, Kara Morrow, Clifford Chance U.S. LLP, New York City, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### *INTRODUCTION*

This proposed class action arises out of an alleged securities fraud scheme at Lernout & Hauspie N.V. ("L & H"), a Belgian speech recognition corporation. In this chapter of the saga, which has spawned multiple actions, lead class plaintiffs, three individuals from Belgium, seek to represent themselves and all investors in L & H who purchased L & H securities on the European EASDAQ stock exchange during the period April 28, 1998 through November 8, 2000, alleging that the defendants violated securities laws under § 10(b) and § 20(a) of the 1934 Securities Act and SEC rule 10(b)–5. Several defendants—KPMG-Belgium, the Outside Directors, defendant Vanderhoydonck, and defendant Willaert—have moved for dismissal under the doctrine of forum non conveniens. After argument, defendants' motions to dismiss are **ALLOWED** under the doctrine of forum non conveniens.

### *FACTUAL BACKGROUND*

**A. A Brief History of the L & H Litigation**

This Court has written several extensive opinions concerning the alleged fraudulent scheme causing the collapse of L & H. Familiarity with the facts set out in those opinions is assumed. *See, e.g., In re Lernout & Hauspie Sec. Litig.,* 208 F.Supp.2d 74 (D.Mass.2002); *In re Lernout & Hauspie Sec. Litig.,* 230 F.Supp.2d 152 (D.Mass.

2002); *In re Lernout & Hauspie Sec. Litig.*, 286 B.R. 33 (D.Mass. Nov.18, 2002); *Bamberg v. SG Cowen*, 236 F.Supp.2d 79 (D.Mass. Dec.9, 2002); *In re Lernout & Hauspie Sec. Litig.*, 236 F.Supp.2d 161 (D.Mass.2003); *Baena v. KPMG, LLP*, 389 F.Supp.2d 112 (D.Mass.2005), *aff'd* 453 F.3d 1 (1st Cir.2006).

L & H, a Belgian corporation, developed and licensed speech technologies such as speech recognition software. At one time, L & H enjoyed tremendous financial success. During its prime, L & H traded its stock simultaneously in two markets: (1) Europe's EASDAQ market, which became known as "NASDAQ Europe," and (2) NASDAQ, an American stock exchange.

However, as alleged in the complaint, L & H's success was predicated on fraudulent misstatements made by L & H's Belgian directors in financial documents and the fraudulent creation of sham firms in Belgium and elsewhere which licensed software. Ultimately, L & H's business collapsed when the allegedly fraudulent acts were discovered in August 2000. Shortly after this revelation of fraud and the Belgian directors' decision to restate several years worth of financial statements, EASDAQ suspended trading of L & H securities. L & H's European securities were quickly rendered valueless.

The Belgian government initiated a criminal investigation of the individuals, particularly the three defendants allegedly involved in the L & H fraud, which is still pending seven years later. As part of this investigation, L & H's directors Lernout, Hauspie, and Willaert were arrested in Belgium. Under Belgian law, all civil cases related to the criminal investigation are stayed pending the resolution of the criminal probe. One of the pending civil actions in Belgium has also been filed by the lead plaintiffs in this case, stating essentially the same causes of action.

Several securities class actions based on this pattern of facts were filed in various United States district courts on August 9, 2000, which were later consolidated before this Court. Although the initial complaint sought to certify a class of all people who purchased L & H stock, the consolidated amended complaint included only individuals who purchased L & H stock on NASDAQ.

## DISCUSSION

■ "The doctrine of forum non conveniens permits a trial court, on a discretionary basis, to dismiss a case where an alternative forum is ... available in another country that is fair to the parties and substantially more convenient for them or the courts." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 719 (1st Cir.1996) (citing *Howe v. Goldcorp Invs., Ltd.*, 946 F.2d 944, 947 (1st Cir.1991)). "But since there is a strong presumption in favor of the plaintiff's forum choice, the defendant must bear the burden of proving both the availability of an adequate alternative forum, and the likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum." *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1349 (1st Cir.1992) (citations omitted); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (declaring dismissal for forum non conveniens appropriate when "trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to the plaintiff's convenience.").

■ In their motions to dismiss, the defendants contend that Belgium would be the proper forum in which to litigate this dispute over European securities. To prove the availability of an adequate alternative forum "the defendant [must] demonstrate[ ] that the alternative forum

addresses the types of claims that the plaintiff has brought." *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000). While there is no class action device in Belgium, shareholders can join together in a single proceeding to present claims for damages. Defendant has introduced evidence that more than 4,000 L & H shareholders, including two of the lead plaintiffs, have joined in the pending *Deminor* civil action in Belgium.

 Because deference is given to plaintiffs' choice of forum, defendants must demonstrate that the balance of public and private factors weighs strongly in favor of dismissal. *See Iragorri*, 203 F.3d at 12 ("defendant must show that the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal."). The private interest factors this Court must consider include (1) relative ease of access to sources of proof; (2) availability of compulsory process; (3) comparative trial costs; (4) ability to enforce a judgment; and (5) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nowak*, 94 F.3d at 719 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). As for public factors, this Court must consider (1) practical difficulties of unnecessarily imposing upon a busy court the obligation to hear a case more fairly adjudicated elsewhere; (2) the imposition on jurors called to hear a case that has no relation to their community; and, (3) the familiarity of this court with applicable laws. *Nowak*, 94 F.3d at 719–20. This list of factors is "illustrative rather than all-inclusive" and constitutes "a helpful starting point." *Iragorri*, 203 F.3d at 12.

 The defendants moved to dismiss the previous NASDAQ class action under the doctrine of forum non conveniens. I denied the motion, announcing two "concerns with the adequacy of Belgium as a forum for this class action securities action: Belgium's lack of a class action mechanism and its failure to recognize the fraud-on-the-market theory." *In re Lernout & Hauspie Sec. Litig.*, 208 F.Supp.2d at 91. In particular, I worried, "Dismissal in favor of Belgium would force each of the thousands of the United States purchasers to file separate actions in Belgium and demonstrate individual reliance on the misstatements." *In re Lernout & Hauspie Sec. Litig.*, 208 F.Supp.2d at 92. For this reason, the Court noted: "The Court has found no cases, and counsel has cited none, where a court has dismissed a securities fraud class action on forum non conveniens grounds where the plaintiff class has purchased stock on the American exchange and no class action remedy was available in the alternative forum." *Id.* at 92.

Unlike the NASDAQ case, this Court finds that the balance of private factors strongly supports dismissal of the case. Although this case involves an alleged fraud that spans three continents, the bulk of the harm and activity rests in Europe. The present case will be built primarily upon the testimony of many Belgian witnesses from KPMG–Belgium, L & H, and Dexia, and documents churned up in Belgium concerning the collapse of L & H in Belgium. The fact that these securities were purchased in Europe and that most class members reside there suggests that Belgium would be a more proper forum. If the Court retained the case, it would likely be forced to adjudicate complex issues of European law. The acrimonious battle in this Court over the accountants' privilege highlights the difficult of applying foreign law. *See In re Lernout & Hauspie Sec. Litig.*, 218 F.R.D. 348 (D.Mass.2003), order amended by *In re Lernout & Hauspie Sec. Litig.*, 2004 WL 3217802 (D. Mass. July 2, 2004). In addition, it is not clear that Europe would enforce a class action judgment from this District.

■ There is very little public interest in retaining the litigation here. As noted, the lead plaintiffs, and most class members are non-residents, and the fraud occurred primarily in Belgium. Most significantly, the shares of stock purchased in this case were all obtained on EASDAQ. *See Howe,* 946 F.2d at 952 (emphasizing that dismissal on forum non convenience ground was appropriate where all stock was purchased "abroad" in Canada and did not trade on stock exchanges in the United States). This Court has already expended significant judicial resources in protecting the rights of American investors on NASDAQ. By contrast, Belgium, which was the headquarters of L & H, possesses significant interest in this case, as illustrated by the ongoing criminal case.

To be sure, there are factors on the other side. First, there are much more difficult hurdles for plaintiffs in Belgium, who do not have the class action mechanism or the ability to use a "fraud on the market" theory to assist in recovery. *See In re CINAR Corp. Sec. Litig.,* 186 F.Supp.2d 279, 298 (E.D.N.Y.2002) (declining to find inadequacy of forum based solely on lack of a recognized fraud-on-the-market doctrine). Nevertheless, increased difficulty in proceeding as a class in a foreign forum does not, without more, render that forum inadequate. *See Howe,* 946 F.2d at 952 (1st Cir.1991) (in securities fraud action against Canadian corporation, holding that "greater difficulty" in meeting class action requirements deemed "beside the point" of adequacy inquiry).

Second, the civil fraud cases in Belgium have been stayed pending the conclusion of any attendant criminal investigations. Although the Belgian government's long delay in concluding its criminal investigation of the L & H collapse gives this Court some reason to worry that civil relief will be indefinitely delayed while criminal investigators in Belgium decide how to proceed, this Court also recognizes that a foreign government is pursuing this important and complex criminal investigation. However, it is worth adding that civil litigants in Belgium will likely receive the benefit of any factual findings from the criminal proceeding, whereas here it is not clear what the effect of a foreign judgment has. Thus, given the strong European presence in this litigation, this Court finds that Belgium has a more compelling stake in the adjudication of the criminal and civil components of this case for European purchases.

As a postscript, I note that the timeliness question also raised by the defendants is very close. The case is time-barred under the applicable two-year statute of limitations unless it is saved by an extension of the equitable tolling doctrine in *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Plaintiffs contend that they received actual notice under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(a)(3)(A), that the NASDAQ case included EASDAQ purchasers, but did not receive actual notice of exclusion from the class definition until the notice of preliminary settlement notice. Defendants argue that the constructive notice afforded by the publicly available amended complaint for the class action and subsequent rulings by this Court is sufficient under the case-law. This is a difficult question of first impression. Still, this Court need not reach this timeliness issue, on which I have waffled, as the case is dismissed in favor of Belgium under the doctrine of forum non conveniens.

### *ORDER*

These motions to dismiss [Docket No. 44, 45, 47, 48, 52, 60] are *ALLOWED*

under the doctrine of forum non conveniens.