# United States Court of Appeals
## For the First Circuit

No. 08-1983

INTERFACE PARTNERS INTERNATIONAL LTD.,

Plaintiff, Appellant,

v.

MOSHE HANANEL,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella, Siler,[*] and Howard,
Circuit Judges.

Andrew H. Schapiro, with whom Christopher H. Houpt and Mayer Brown LLP, were on brief for appellant.
Lawrence G. Green, with whom Burns & Levinson LLP, was on brief for appellee.

August 5, 2009

[*] Of the Sixth Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** Interface Partners International Ltd. ("IPI") filed a complaint in the United States District Court for the District of Massachusetts against Moshe Hananel ("Hananel"), IPI's former employee and manager of its office in Israel. In its complaint, IPI accused Hananel of breaching his contract with IPI.[1] In this case, which is similar to a prior case we decided, see Adelson v. Hananel, 510 F.3d 43 (1st Cir. 2007), IPI appeals the district court's granting of

---

[1] The complaint alleges that Hananel breached his contract with IPI by continuing to work at his prior job despite "represent[ing] [in his employment contract] that he would stop his prior work (except for occasional consulting) and devote his full time to the business of [IPI]"; by "conduct[ing] other personal business while being paid by [IPI] to devote his full time to [IPI's] business"; by "using [IPI's] monies to hire employees and others to work on his private enterprises"; by "engaging in numerous instances of international travel, which were for personal business and which he paid for with [IPI's] funds"; by "using [IPI's] monies to make charitable contributions (in his own name)"; by "mak[ing] payments to groups of which he was a member which provided no benefit to [IPI]"; and by "pay[ing] personal expenses, and wrongfully pay[ing] himself for vacation days to which he was not entitled."

Hananel's motion to dismiss on forum non conveniens grounds.[2]
After careful consideration, we affirm.

## I.  Background

The following facts are relevant to this appeal.[3]  IPI is a Delaware corporation with its principal place of business in Needham, Massachusetts.  IPI also has offices in Nevada and Israel. Hananel is a citizen and resident of Israel.  Sheldon Adelson, IPI's sole owner and only shareholder, established IPI for the purpose of making business investments in Israel.

In 1995, Adelson and Hananel, while in Israel, "got to the general terms of the understanding" that Hananel would work as

---

[2]  As we make clear infra, the instant case is distinguishable from our earlier opinion.  Although the current suit and Adelson refer to the same employment contract between Hananel and Adelson, the forum non conveniens issue in each case involves different facts, respectively.  The dispute upon which the earlier opinion was based pertained to the particular rights granted to Hananel by the terms of the contract, whereas IPI's complaint here focuses on Hananel's performance as a manager.  For example, Hananel's alleged misappropriation of IPI funds and the fact that he allegedly did not dedicate himself full-time to work on behalf of IPI were not germane to the resolution of the forum non conveniens issue in the earlier case.  Based on its consideration of different facts, in the present case, the district court found that the private and public interest factors relevant to the forum non conveniens analysis strongly favor the Israeli forum, as opposed to the relevant facts in Adelson, which led the district court to find these factors to be "in equipoise."  Moreover, the instant case is distinguishable from our earlier opinion because we concluded in Adelson that the district court impermissibly considered the existence of concurrent litigation in Israel in its forum non conveniens analysis, an error the district court did not make here.

[3]  A more detailed recounting of the relationship between the parties can be found in our prior opinion, id. at 46-48, and in the district court's opinion below.

IPI's general manager in Israel. According to Adelson, on December 5, 1995, in IPI's Needham, Massachusetts office, Hananel and IPI executed an oral employment contract confirming that Hananel would become IPI's general manager at a salary of $100,000 per year and would receive a percentage share in net profits arising from investment gains during his time with IPI.[4]

During Hananel's tenure with IPI, he was based in Israel and responsible for finding investments in Israel. In April 2000, IPI terminated Hananel after about four and one-half years of service. In 2002, IPI sued Hananel in Israel claiming that Hananel had misused IPI funds. This suit was litigated for nearly four years in Israel. In July 2006, IPI requested the Israeli court to dismiss its case without prejudice so that it could re-file in the United States. The Israeli court granted IPI's motion, but ordered IPI to pay Hananel's costs of litigation.[5]

---

[4] The facts of the December 5, 1995 meeting are disputed.

[5] IPI argued to the district court that it had asked the Israeli court to dismiss its case because Hananel had claimed, in one of his lawsuits against IPI, that Adelson was subject to Israeli jurisdiction, and IPI feared that pursuing its claims in an Israeli court would help Hananel establish jurisdiction over Adelson in that separate proceeding. The district court was unpersuaded by this justification, and stated that the only evidence in the record that supported IPI's argument was a one-sentence assertion it made at a hearing before the Israeli court. At this hearing, IPI's counsel stated that it was withdrawing the suit "[i]n view of claims that have been made in other proceedings, whereby by Interface's filing of the present claim Mr. Sheldon Adelson had subjected himself to the international jurisdiction of Israel . . . ."

IPI subsequently filed the instant lawsuit in the Superior Court of Massachusetts and Hananel removed the case to the United States District Court for the District of Massachusetts. In its complaint, IPI alleged that Hananel had breached his employment contract and claimed that Hananel "wrongfully took and or destroyed corporate documents leading to many months of delay before [IPI] could determine the full range of [Hananel's] various wrongful breaches of his employment agreement." Hananel moved to dismiss the action on grounds of forum non conveniens.

The district court granted Hananel's motion.[6] It concluded that IPI's decision to move for dismissal of its Israeli action "was motivated by a desire to vex and to oppress Hananel and, accordingly, that IPI is not entitled to the heavy presumption ordinarily accorded to a Plaintiff's choice of forum." The district court then applied the two-part test for forum non conveniens cases first articulated by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947). It found that the Israeli forum was an "adequate alternative forum" and that "considerations of convenience and judicial efficiency strongly favor litigating the claim in Israel." IPI appeals.

---

[6] The district court adopted, in full, a magistrate judge's report and recommendation granting the motion to dismiss.

## II. Discussion

### A. Standard of Review

"The decision to grant or deny a motion to dismiss for forum non conveniens is generally committed to the district court's discretion." Adelson, 510 F.3d at 52 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981)). "We will find an abuse of discretion if the district court (1) failed to consider a material factor; (2) substantially relied on an improper factor; or (3) assessed the proper factors, but clearly erred in weighing them." Id. (citing Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)). We are mindful of the fact that we must "neither substitute [our] judgment for that of the district court nor strike the balance of relevant factors anew." Iragorri, 203 F.3d at 12. Errors of law are reviewed de novo. Adelson, 510 F.3d at 52.

### B. Applicable Law

"When a defendant moves for dismissal on forum non conveniens grounds, it bears the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Iragorri, 203 F.3d at 12. The first condition is usually met "if the defendant demonstrates that the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amenable to service of process there." Id. (citing Piper, 454 U.S. at 254 n.22).

-6-

To determine whether the defendant satisfies the second condition, a more involved inquiry is required as "the defendant must show that the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal." Id. (citing Gilbert, 330 U.S. at 508-09). Guided by the Supreme Court in Gilbert, we have stated that:

> [c]onsiderations relevant to the litigants' private interests include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [the] possibility of view of premises, if view would be appropriate to the action; . . . [and the trial judge's consideration of] all other practical problems that make trial of a case easy, expeditious and inexpensive."

Id. (quoting Gilbert, 330 U.S. at 508).

With respect to the public interest factors, we have stated that the district court should consider "such things as the administrative difficulties of docket congestion; the general goal of 'having localized controversies decided at home,' and concomitantly, ease of access to the proceedings on the part of interested citizens; the trier's relative familiarity with the appropriate rules of decision; and the burdens of jury duty." Id. (quoting Gilbert, 330 U.S. at 508-09).

In addition, while certainly "a plaintiff enjoys some degree of deference for his original choice of forum," Adelson, 510 F.3d at 53 (citing Gilbert, 330 U.S. at 508), we note some

-7-

tension in our case law regarding whether a district court, before conducting the aforementioned two-part forum non conveniens analysis, should accord a plaintiff's choice of a home forum "heightened deference."  Notably, in Adelson, we cited to the Supreme Court's holding that "when the plaintiff has chosen his home forum, he should not be deprived of it absent a 'clear showing' of either 'oppressiveness and vexation' or evidence that the chosen forum is 'inappropriate.'"  510 F.3d at 53 (quoting Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)).  Yet, in Iragorri, we remarked that "[t]he Koster Court's use of the term 'oppressiveness and vexation' neither created an independent standard nor raised the bar for dismissal in forum non conveniens cases."  203 F.3d at 15.  Instead, the Iragorri court viewed "the 'strongly favors' standard as a distillation of the 'oppressiveness and vexation' language."  Id.

        What is clear amidst this uncertainty, however, is that even if a heightened deference standard were to apply to a plaintiff's choice of a home forum, there is no automatic right to the presumption, and as explained below, the district court should deny the presumption to plaintiffs acting with a vexatious and oppressive motive.  As the Supreme Court has instructed, "[a] citizen's forum choice should not be given dispositive weight" and "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum."  Piper, 454 U.S. at 254 n.23.

-8-

### C. Hananel's Burden for Dismissal on Forum Non Conveniens Grounds

#### 1. Presumption in Favor of Plaintiff's Choice of Forum and Heightened Deference

We need not reconcile our precedent today regarding whether a plaintiff's choice of her home forum carries a presumption of heightened deference because, even if this presumption were to apply, the district court did not commit error here. We disagree with IPI's contention that our case law would preclude a district court, if it found substantial support in the record for its conclusion, from considering a plaintiff's vexatious or oppressive motive for bringing suit in an alternative forum.[7]

Thus, in the present case, we cannot conclude that the district court erred in finding IPI's choice of its home forum to be undeserving of heightened deference. The district court requested IPI to point to evidence in support of its purported explanation for requesting dismissal from the Israeli court, and IPI could not do so save for citing to a one-sentence claim it made during a hearing before the Israeli court. The fact that IPI could not provide this evidence, taken together with the fact that, here, IPI engaged in nearly four years of discovery in an Israeli forum

---

[7] Specifically, IPI argues that a defendant cannot overcome a plaintiff's presumption of heightened deference without a clear showing that the plaintiff's forum choice had a vexatious or oppressive effect on defendants. Here, IPI faults the district court for mistakenly focusing on whether plaintiff had a vexatious or oppressive intent.

-- a forum it initially chose[8] --, and that IPI, according to the district court, subsequently moved to dismiss its suit "on the verge of being ready for trial," adequately support the district court's determination that IPI was operating with a vexatious and oppressive motive.[9]

We conclude that even if a presumption of heightened deference were to apply to a plaintiff's choice of a home forum, the district court did not err in denying the presumption to IPI. Further, as we discuss infra, because we hold that the district court did not abuse its discretion in determining that the public and private interest factors strongly favor the Israeli forum, we conclude that the district court did not err in finding that a

---

[8]   Notably, the Adelson court stated that "a heavy presumption weighs in favor of [a U.S. citizen plaintiff's] initial forum choice."  510 F.3d at 53 (emphasis added).

[9]   Even if the district court had found IPI's stated reason for moving for dismissal in Israel persuasive, we still would not be able to conclude that the district court erred as there is ample evidence in the record to conclude that, at best, IPI was engaged in forum shopping.  As our sister court has noted, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons -- such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case . . . -- the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts." Iragorri v. United Tech. Corp., 274 F.3d 65, 72 (2d Cir. 2001) (en banc). Here, we agree with the district court that the "sole reason IPI advances to explain its choice of forum is a matter of litigation strategy," and, thus, the district court, even if it believed that IPI was not operating with an oppressive or vexatious motive, could have concluded, on this basis, that IPI's choice of forum was not entitled to heightened deference.

presumption in favor of any ordinary deference to a plaintiff's choice of forum was overcome.  See <u>Iragorri</u>, 203 F.3d at 17-18 (holding that presumption in favor of the plaintiff's choice of forum is overcome "where the [trial] court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable" (quoting <u>Piper</u>, 454 U.S. at 257)).

## 2. Adequate Alternate Forum

The district court found that "Israel is an adequate alternative forum because its courts address the sort of breach of contract claim asserted in this case, and because Hananel, an Israeli citizen is amenable to service there."  We agree and see no reason to disturb this finding as this matter has been litigated for nearly four years in the Israeli forum, a forum in which IPI initially chose to pursue its claims.  Further, IPI does not contend either that "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all," <u>Piper</u>, 454 U.S. at 254, or that the Israeli forum "does not permit litigation of the subject matter of the dispute," <u>id.</u> at 254 n.22.  We also conclude that the district court did not abuse its discretion in conditioning its dismissal on Hananel's agreement not to oppose reinstatement of the Israeli proceeding.  See <u>Ahmed</u> v. <u>Boeing Co.</u>, 720 F.2d 224, 225 (1st Cir. 1983) (upholding conditional dismissal in forum non conveniens case).

-11-

### 3. Public and Private Interest Factors

We turn to the second requirement and analyze whether the district court abused its discretion in applying the private and public interest factors as set forth in Gilbert, 330 U.S. at 508-09, recognizing that "the list of factors is illustrative rather than all-inclusive." Iragorri, 203 F.3d at 12.

#### i. Private Interest Factors

##### a. Relative Ease of Access to Sources of Proof

With respect to the ease of access to sources of proof, the district court stated that although the parties dispute whether the contract was formed in Massachusetts, it is undisputed that "Hananel's performance pursuant to the contract occurred in Israel." The district court explained as follows:

> [Hananel] was in charge of the IPI office in Israel. He searched for investment opportunities in Israel on IPI's behalf. He received his pay in Israel. He spent IPI's funds in Israel. He was not summoned to the IPI headquarters in Needham to report on his activities in Israel; indeed, he never returned to the Needham office after the December 5, 1995, meeting, although he did return to the United States once or twice.

In addition, the district court noted that "Hananel was almost always in Israel both when he was working for IPI and when he was speaking with Adelson," who supervised him from both the United States and Israel; that "Hananel's alleged breaches of the contract occurred in Israel"; the affiants upon which IPI relied to develop

-12-

its affidavits during the pretrial litigation phase in Israel are "all Israeli witnesses testifying to events that occurred in Israel"; the "related documents" which include credit card receipts and internal corporate documents and would need to be translated into English "are located in Israel"; and that Hananel anticipates calling twenty-nine Israeli witnesses.

Given these factors, the district court concluded as follows:

> On balance, the factor concerning access to sources of proof substantially favors the Israeli forum. The locus of the alleged misconduct is in Israel. The majority of the witnesses are in Israel. The most significant testimony on behalf of each party comes from Israel (i.e., the testimony of Israeli-based witnesses regarding Hananel's actions in Israel). While IPI's evidence suggests that the contract was formed in Massachusetts, other evidence clearly establishes that many of the terms were negotiated in Israel. In addition, the Parties' subsequent course of conduct -- much of which occurred in Israel -- may bear upon the terms of the Parties' relationship given the oral nature of the contract and the heated disputes over the terms of the contract. Moreover, the presentation of evidence in the bilingual courts of Israel is simpler for the Parties than our English-only court.

IPI disagrees with the district court's conclusion that the availability of witnesses and documents strongly favor dismissal. IPI argues that there is "little reason to believe that Hananel would even benefit from the proffered testimony" from the witnesses he intends to call. IPI maintains that "the record

simply does not show that the proposed Israeli witnesses are even relevant, let alone so critical to Hananel's defense that proceeding in the United States would cause 'manifest injustice.'" With respect to the documents, IPI challenges the district court's conclusion that many of the documents created and maintained in Israel are in Hebrew, pointing out that the district court did not identify any such documents.

IPI's arguments are unavailing. Consistent with our case law, the fact that the events relating to Hananel's alleged misconduct occurred in Israel weighs heavily in favor of the foreign forum. See Howe v. Goldcorp Invest., Ltd., 946 F.2d 944, 951 (1st Cir. 1991) (holding that the balance of conveniences favor with "unusual strength" the Canadian defendants seeking a Canadian forum because "[t]he relevant events surrounding both plaintiff's 'misrepresentation' and 'breach of fiduciary duty' claims took place in Canada, not in the United States"); see also Piper, 454 U.S. at 257-58 (holding that because "[a] large proportion of the relevant evidence is located in Great Britain" it was not unreasonable for the district court to conclude "that fewer evidentiary problems would be posed if the trial were held in Scotland").

Furthermore, we disagree with IPI's claims that the district court abused its discretion with respect to its treatment of the relevance and identity of Hananel's witnesses. As a

preliminary matter, we have noted, "there is no 'blanket rule' that a defendant affirmatively demonstrate, by affidavit, the unavailability of a foreign witness and the significance of the witness's testimony."  Mercier v. Sheraton Int'l, Inc. (Mercier II), 981 F.2d 1345, 1356 (1st Cir. 1992).  Regardless of the existence of such a rule, and contrary to IPI's assertions otherwise, Hananel has adequately identified the twenty-nine witnesses he intends to call in the proceedings below, and has indicated the relevance of at least ten Israeli witnesses.  The district court noted that the "record contains affidavits from those ten Israeli witnesses, each of whom would testify regarding Adelson's knowledge of Hananel's activities in Israel . . . or regarding various facts disputing the allegations of misconduct asserted by IPI."

In view of the discretion and flexibility we afford to the district court in conducting its forum non conveniens analysis, we will not second-guess its judgment where there is strong record support for its considered conclusion.  As we have remarked, "[t]he trial judge is in the best position to know the interstices of any particular case and to evaluate both the parties' interests and the likely efficacy of the truth-finding process."  Iragorri, 203 F.3d at 16 (citing Gilbert, 330 U.S. at 508).  Consequently, we cannot say that the district court abused its discretion in concluding

that testimony from Hananel's Israeli witnesses was relevant and weighed in favor of the Israeli forum.[10]

### b.  Compulsory Process

IPI does not challenge the district court's conclusion that Hananel would be unable to compel any of his witnesses to appear in the United States and that live in-person testimony is preferable to video testimony or live videoconferencing testimony. We have stated that the ability to produce live testimony can weigh strongly in favor of a particular forum.  See Iragorri, 203 F.3d at 15 (holding that the district court did not abuse its discretion in considering private interest factors in case where neither witness could be compelled to attend trial in Maine); Mercier II, 981 F.2d at 1356 (noting that "the fact-finder's opportunity to evaluate . . . credibility on the basis of in-person testimony could be crucial to a reliable resolution of these factual disputes" and that "deposition testimony and letters rogatory, even if available to the American court, would be less than satisfactory substitutes

---

[10]  Admittedly, the district court's determination that many of the documents maintained in Israel are in Hebrew, thus requiring translation into English, was somewhat speculative given its statement that "[n]o evidence expressly establishes whether these documents are in English or Hebrew."  The same is arguably true with respect to the district court's conclusion that most of the Israeli witnesses would testify in Hebrew.  However, even if the district court overstated the convenience of bilingual courts in Israel, we cannot conclude that the district court abused its discretion given the fact that most of the evidence is located in Israel.  See Howe, 946 F.2d at 951 (noting that fact that documents and witnesses were located in Canada weighed in favor of Canadian forum).

-16-

for in-person testimony"); <u>Howe</u>, 946 F.2d at 952 ("Compulsory process would seem especially important where, as here, fraud and subjective intent are elements of the claim, making the live testimony of witnesses for the purposes of presenting demeanor evidence essential to a fair trial."). Accordingly, we cannot conclude that the district court abused its discretion in weighing this factor.[11]

### ii. Public Interest Factors

### a. Judicial Economy

The district court concluded that "judicial economy is poorly served by repeating in this forum the discovery the Parties completed in Israel." IPI disagrees with this conclusion and argues that the "evidentiary discovery that the parties conducted in Israel could easily be transferred to Massachusetts, allowing this case to proceed without protracted discovery." However, as the district court correctly noted, "discovery rules in the United States differ from those that govern in Israel" and "[f]urther pretrial proceedings would need to occur here even though all pretrial proceedings were complete in Israel." Once again, we cannot conclude that the district court abused its discretion in

---

[11] The district court also considered other private interest factors such as costs to the parties and Hananel's health, finding that these factors did not strongly weigh in favor of dismissal. The district court's findings as to these factors do not alter our conclusion that it did not abuse its discretion in finding that an overall balancing of the private interest factors weigh strongly in favor of dismissal.

finding that this factor weighed in favor of the Israeli forum. The district court "best appreciates [a] case's nuances and the parties' circumstances," Iragorri, 203 F.3d at 13, and, hence, it is in the best position to decide whether discovery would be unnecessarily duplicative and if the goals of judicial efficiency would favor a particular forum.[12]  Here, that determination was reasonable.

### b. Familiarity with Applicable Law and Interest in Deciding Localized Controversies Locally

The district court acknowledged that if the contract between Hananel and IPI was formed in Massachusetts, the state has an interest "in enforcing business transactions consummated within its boundaries."  However, the district court also cited to undisputed evidence in the record that the parties contemplated that aspects of the employment relationship would be subject to Israeli labor law and that the terms of the contract were negotiated in Israel.  IPI argues that the district court erred,

---

[12]  The district court also cited the fact that "in this forum it would be necessary for the Court and the finder of fact to receive translations of Hebrew language evidence." As we mentioned above, the district court may have overstated the difficulties posed by translating evidence given that it could not identify whether the documents created and maintained in Israel are in Hebrew. Nevertheless, we conclude that the district court did not abuse its discretion in applying this factor in view of its other justifications for why duplicating discovery proceedings in the Massachusetts forum would not be an efficient way to proceed.

contending that Massachusetts law should govern the contract and that Massachusetts has an interest in enforcing local contracts.[13]

Although admittedly this is a closer issue, we conclude that the district court did not abuse its discretion in applying this factor as "this case has a great deal to do with [Israel]." Howe, 946 F.2d at 953. The events surrounding Hananel's alleged breach occurred in Israel and evidence exists that Israeli law governs aspects of the employment relationship.[14] See id. (noting that "plaintiff's claims implicate duties the defendants owed to the corporation and its shareholders under Canadian law" and that "at least some significant portion of the adjudication of [the defendant's] case will involve tasks most easily and appropriately handled by a Canadian court: interpreting primarily Canadian law and applying it to matters principally of concern to Canada and Canadians"). Although the district court correctly acknowledged that federal courts, if necessary, are capable of interpreting Israeli law, here, the district court did not err in concluding that Israel is the preferable forum given Israel's stronger connection to the instant case. See Mercier II, 981 F.2d at 1355 (concluding in case where performance of contract and alleged

---

[13] IPI also argues that the district court should have made a clear choice of law ruling. IPI has not cited to any authority for this proposition nor have we found any support in our case law for IPI's claim.

[14] In the instant case, Hananel supplemented the record with this evidence.

breach of contract at issue occurred in Turkey that district court may consider "any attenuated connection between the particular United States forum and the matter in litigation"); Howe, 946 F.2d at 952-53 (noting in its balancing of factors the weak connection of Massachusetts or any other United States jurisdiction to the securities fraud at issue in its case).

In any event, even if these public interest factors do not as decisively favor the Israeli forum as do the private interest factors, we cannot conclude that the district court abused its discretion because it reasonably concluded that an overall balancing of both private and public interest factors strongly favored Israel as the more convenient and judicially efficient forum.

### III.  Conclusion

For the foregoing reasons, we conclude that the district court did not abuse its discretion in granting Hananel's motion to dismiss on forum non conveniens grounds.  "Given the standard of review, it is not within our proper purview to disturb a trial court's reasoned, record-rooted determination that justice could be done more perfectly in a foreign forum than in an American jurisdiction . . . ." Iragorri, 203 F.3d at 16.  Accordingly, we affirm the judgment of the district court.

**Affirmed**.